AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.   3:20-mc-00623 |
| The black bag containing jewelry, 5 cellphones, U.S. currency; and 4 firearms currently located at 618 Airport Road, Pendleton,OR as described in Attachment A | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
The black bag containing jewelry, 5 cellphones, U.S. currency; and 4 firearms currently located in evidence at the Oregon State Police Command Center, 618 Airport Road, Pendleton,OR as described in Attachment A,
located in the _____ District of _____Oregon_____ , there is now concealed *(identify the person or describe the property to be seized)*:
The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h) | Money Laundering; |
| 18 U.S.C. § 1956(a)(2) | International Money Laundering |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Raymon Gragg, IRS-CI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone at *10.23* a.m./p.m.  *(specify reliable electronic means).*

Date:  ____06/24/2020____

_____
*Judge's signature*

City and state:  Portland, Oregon

Hon. John V. Acosta, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF RAYMON GRAGG

### Affidavit in Support of an Application Under Rule 41 for a Search Warrant

I, Raymon Gragg, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Internal Revenue Service Criminal Investigation.  I have been so employed since September 11, 2014.  I graduated from the University of Oregon in Eugene, Oregon with a Bachelor of Science in Political Science and from the University of Denver in Denver, Colorado with a Master of Accounting.  I graduated from the Federal Law Enforcement Training Center, Criminal Investigation Training Program in November of 2014 and the Internal Revenue Service – Criminal Investigation Special Agent Basic Training Program in March of 2015.  I am authorized to investigate potential violations of the Internal Revenue Code, Title 26, United States Code, Title 18, and the Bank Secrecy Acct, Title 31.  I have participated in several search warrants and other investigations of financial crimes including search warrants that involved money laundering, and international financial transactions.  I have discussed this case and information contained in this affidavit with other experienced IRS – Criminal Investigation Special Agents who have investigated international money laundering, crimes committed by registered Money Services Businesses (MSB) in violation of the Bank Secrecy Act.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to seize certain items (Attachment B) currently located at the Oregon State Police Command Center in Pendleton, Oregon, (Attachment A) as

**Page 1 —Affidavit of Special Agent Raymon Gragg**        **USAO Version Rev. July 2015**

evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C. § 1956(h) (Money Laundering Conspiracy), and 18 U.S.C. § 1956(a)(2) (International Money Laundering).

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant to seize the items identified in Attachment B and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

4.      An affidavit in support of authority to search the items identified in Attachment B will be submitted at a later date.

## Applicable Law

5.  The laws at issue in this investigation are as follows:

a)  **Title 18 U.S.C. § 1956(h):** Money Laundering Conspiracy, makes it a felony to any person who conspires to commit any offense defined in Title 18 U.S.C. §1956 or Title 18 U.S.C. §1957.

b)  **Title 18 U.S.C. § 1956(a)(2):** International Transportation Offense, makes it a felony for an individual to transports, transmits, transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity; or knowing that the monetary

**Page 2 —Affidavit of Special Agent Raymon Gragg                 USAO Version Rev. July 2015**

instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law.

### Statement of Probable Cause

6.      I, with the assistance of the United States Department of Agriculture OIG and local law enforcement officers, have been investigating Miguel Angel JIMENEZ (hereinafter "JIMENEZ") (DOB 9/20/1964) of Milton-Freewater, Oregon, for his involvement in criminally defrauding the United States through stealing public money from the SNAP Program in Oregon, tax evasion on his 2018 federal income tax return, and money laundering. JIMENEZ has no known criminal history.

7.      JIMENEZ is the owner/operator of two Hispanic-themed markets that are named Los Tapatios Market LLC ("hereinafter Los Tapatios Market"):

       a.  Los Tapatios Market, 84256 Highway 11, Milton-Freewater, Oregon, a is a local;

       b.  Los Tapatios Market Llc, 114 S. 9th Ave, Walla Walla, Washington 99362.

8.      Both of the Los Tapatios Markets are also known as Carniceria Los Tapatios and Los Tapatios Market Llc. JIMENEZ registered the Walla Walla Los Tapatios Market with the Washington Secretary of State's office on February 20, 2011, and described the business as retail. JIMENEZ registered Oregon Los Tapatios Market with the Oregon Secretary of State's office on April 19, 2011.

**Page 3 —Affidavit of Special Agent Raymon Gragg**          **USAO Version Rev. July 2015**

9.     JIMENEZ's Los Tapatios Markets are registered as a Money Services Businesses with the United States Department of the Treasury Financial Crimes Enforcement Network. JIMENEZ's Los Tapatios Markets provide check cashing and wire services.

10.     On June 24, 2020 I participated in a warrant to search JIMENEZ residence, the Milton-Freewater business, JIMENEZ's 2007 Chevrolet, JIMENEZ's 1994 GMC, and JIMENEZ's 2010 Nissan, authorized by the Honorable Stacie F. Beckerman (3:20-mc-00609 A-F) (Exhibit 1). During the search, investigators discovered the items that are the subject of this affidavit.

## Background

**Money Service Businesses**

11.     Corporate Money Service Businesses (MSB) are non-bank financial services businesses that provide distinct types of financial services: (1) currency dealers or exchangers; (2) check cashers; (3) issuers of traveler's checks, money orders, or stored value; (4) sellers or redeemers of traveler's checks, money orders, or stored value; and (5) money transmitters. A business that meets the definition of an MSB must comply with Bank Secrecy Act requirements. Corporate MSBs often contract through numerous agents to provide financial services, including, wire transfer services on behalf of the MSB. The agent of the corporate MSB will be defined as an MSB if it provides one or more of the five financial services listed above. The MSB agent is either connected to the corporate MSB via a computer terminal or by a direct telephonic connection.

12.     A money transmitter is a MSB which receives money from customers to remit, or send, to the place designated by the customer. The term "wire transfer" in this affidavit refers to the money transfer through the MSB as opposed to a transfer through a traditional bank.

**Page 4 —Affidavit of Special Agent Raymon Gragg          USAO Version Rev. July 2015**

13.     In a typical transaction, the wire transfer begins when a customer (sender) enters the business of an authorized MSB agent location for the purpose of sending money to a receiver (beneficiary).  The customer provides their own name, address, and telephone number.  The customer also provides the name of the receiver (beneficiary) of the wire transfer, as well as the receiver's city, state, and country.  The customer will either provide this information directly to an employee at the MSB agent location for the employee to enter it into the corporate MSB computer system, or the customer uses the telephone at the sending agent location to speak directly with an operator who works for the corporate MSB; either way the same result is achieved.  After the information is collected, the sender provides the principal amount to be transferred including the send fee, in cash to the MSB agent.  Alternatively, some corporate MSBs provide a check clearing service in which the corporate MSB accepts a check received by the MSB agent from the customer in exchange for a wire transfer.  The check clearing service is sometimes called "CheckDirect".  The CheckDirect system uses a computer system located in the MSB agent's business to receive the customer's check.  An MSB agent is able to accept both cash payments, and the CheckDirect payment system.  The fee for a wire transfer from the United States to Mexico is often $10.

14.     The sender is then provided a receipt containing all of the provided information plus the date and time the transfer was sent and a unique transaction number sometimes called an MTCN (Money Transfer Control Number).  This MTCN is provided by the customer to the intended beneficiary and is required for the wire transfer to be collected by the beneficiary in Mexico.

/ / /

/ / /

**Page 5 —Affidavit of Special Agent Raymon Gragg**                    **USAO Version Rev. July 2015**

15.     MSB agents must provide the corporate MSB with the money, less the agent's fee, that was collected from conducting wire transfers for customers. MSB agents generally provide this money through bank deposits into what the industry commonly refers to as "settlement accounts" or "sweep accounts."

16.     According to the BSA and its implementing regulations, MSB agents that provide money transfer services must obtain and record specific information for each money transfer of $3,000 or more, regardless of the method of payment. States may require identification for transfers involving amounts less than $3,000. Additionally, many corporate MSBs impose more stringent identification requirements upon their agents and require them to maintain the sender's information for lower dollar transactions—such as any transaction above $1,000. The corporate MSB relies upon their contracted MSB agents to follow anti-money laundering corporate policies and state and federal laws and regulations.

**Many to Many Money Laundering Process**

17.     I know based on my training and experience that it is common for drug trafficking organizations to use recording and paying agent locations of MSBs to launder probable heroin, fentanyl and methamphetamine proceeds from U.S. distribution cities to drug source cities and states in Mexico.

18.     MSB anti-money laundering compliance systems, as currently designed, detect and interdict high risk frequent payouts to one recipient from multiple senders or the inverse—high frequency transfers from one sender to many payees. I know based on my training and experience that a money laundering technique, not currently detected by MSB anti-money laundering compliance controls, involves money transfers from many non-repetitive sender

names to many non-repetitive payee names in a defined high risk corridor otherwise known as the "Many to Many" typology.

19.     I know based on my training and experience that drug trafficking organizations deliver cash to complicit MSB agents along with lists of payee names (beneficiaries) and locations in Mexico, to whom wire transfers are to be sent. The locations in Mexico are typically drug source cities. Complicit MSB agents collaborate with drug traffickers by fabricating or misusing unique sender names and identities for these transactions. Those sender identities are often used no more than a few times. Complicit MSB agents then structure the falsified transactions to be just below the corporate MSB's identification threshold, which in turn enables the MSB agent to send the most money per transaction without also fabricating a fake government ID number. It is common for complicit MSB agents to provide cash couriers with receipts for each completed transaction in order to receive their fees and to prove the cash was sent as directed. Corrupt MSB agents are anxious to receive more deliveries of cash and payee name lists because they receive an agreed upon fee from drug traffickers for each sent money transfer. The drug cash couriers then send images of the receipts to traffickers in the intended payout cities in Mexico. Traffickers in drug source locations then collaborate with complicit paying agents by providing the transaction receipts including the money transfer reference numbers. Complicit paying agents complete the transaction when they pay out the transfers sent to various payee names to a trafficker in drug source locations.

20.     According to an Arizona Attorney General Intelligence Report: "Approximately 80% of all person to person MSB money transfers globally are below $500 each. The average MSB money transfer sent from the United States to Latin American countries is below $400. A very large majority of the tens of millions of yearly person to person money transfers below $500

**Page 7 —Affidavit of Special Agent Raymon Gragg**          **USAO Version Rev. July 2015**

each are related to family maintenance while experience has shown the remaining 20% of global

person to person transfers of $500 and greater have a much higher correlation with organized

illegal activity".

21.      I know based on my training and experience that investigations of complicit MSB

agents using the "Many to Many" money laundering process have identified five characteristics

or criteria:

- a) High frequency over a short period (often in minutes) of daily sent transfers to the same drug source state especially when compared to other nearby MSB agent locations;

- b) Heavy concentration of sent transfers paid in one primary drug source state in Mexico;

- c) Almost all sent transfers are below corporate MSB government ID thresholds at which the corporate MSB requires provision of a government ID number;

- d) Unique money transfer principal amounts repeated in daily activity and/or are concentrated in a dollar range;

- e) High percentages, over 80% for example, of money transfers to drug source states have non-repetitive sender and payee name combinations.

**Reporting Requirements for MSBs**

22.      Pursuant to the Bank Secrecy Act (31 CFR Chapter X) and related rules,

registered money transmitters are required to report suspicious activity to the United States

Treasury Department. A report must be filed when a transaction that is conducted by, at or

through the MSB is both suspicious and $2,000 or more. A transaction is defined as suspicious

if the MSB knows, or has reason to suspect that the transaction, or pattern of transactions of

which the transaction is a part involves funds derived from illegal activity, or is designed to

evade the reporting requirement by structuring, or breaking the transactions down to avoid

hitting or exceeding $2,000.  31 CFR 103.20 (a).

**Page 8 —Affidavit of Special Agent Raymon Gragg            USAO Version Rev. July 2015**

23.     On July 17, 2017, JIMENEZ signed, as the owner/officer of his stores, an Acknowledgement Form for Intermex Agents.  In this form, JIMENEZ acknowledges that he received and made available to employees Bank Secrecy Act and Anti-Money Laundering Compliance program training.  JIMENEZ also designed himself as the Compliance Officer of his businesses.

24.     Between 2017 and 2019, JIMENEZ's two businesses filed a total of only 5 reports of suspicious activity: 2 in 2019, 2 in 2018, and 1 in 2017.

25.     In November 2, 2018, JIMENEZ received written notification from the United States Treasury Department that during a recent audit, the Internal Revenue Service identified weaknesses or deficiencies related to the Bank Secrecy Act at the Los Tapatios Market business in Milton-Freewater.  The Internal Revenue Service report identified weaknesses related to MSB Policies, Procedures, and Internal Controls, MSB Training, and MSB Independent Review.  On November 9, 2018, JIMENEZ signed a statement that acknowledging receipt of the report, and agreed to follow the recommendations and to correct the Anti-Money Laundering program, reporting, and recordkeeping violations.

**Financial Analysis of Intermex Wire Records**

26.     The Los Tapatios Markets in Milton-Freewater and Walla Walla operate as nonbank financial services companies that provide check cashing services, and wire transfer services, as well as retail grocery products.  JIMENEZ has operated as an MSB agent for several corporate MSBs, to provide wire transfer services, including Servicio Uniteller Inc., Sigue Corporation, and Intermex Wire Transfer LLC (hereinafter "Intermex").  The Los Tapatios Market businesses primarily operated as an MSB agent for Intermex.  Between January 2017 and

May 2019, approximately 82% of the money that Los Tapatios Market sent in wire transfers was sent as an agent of Intermex.

27.     Investigators obtained Columbia Bank account records for JIMENEZ's Los Tapatios business bank account ending 4962 (hereinafter "Act 4962") held in the name of Los Tapatios Market LLC. Act 4962 is registered to Los Tapatios Market LLC in Milton-Freewater, Oregon and JIMENEZ is registered as the owner and signer of Act 4962. Investigators obtained Columbia Bank account records for business bank account ending 4970 (hereinafter "Act 4970") held in the name of Los Tapatios Market LLC. Act 4970 is registered to Los Tapatios Market LLC in Walla Walla, Washington and JIMENEZ is registered as the owner and signer of Act 4970. JIMENEZ operated business bank Act 4962 and Act 4970 between July 2019 and the present.

28.     I reviewed Intermex wire transfer transaction records from JIMENEZ's Milton-Freewater business, in which JIMENEZ was the MSB agent, between March 31, 2017 and May 31, 2020. I identified the following patterns in the wire transfers, sent using Intermex, at the Milton-Freewater business:

    a) Approximately 95% of the 1,423 of the total wire transfers were sent to Mexico.[1] Approximately 18% of the wire transfers sent went to Jalisco, Mexico and approximately 22% of the wire transfers sent went to Michoacan, Mexico.[2] I

/ / /

---

[1] A total of 30,203 were sent from the Los Tapatios Market in Walla Walla and Milton-Freewater. Approximately 94% of total wires sent from the Los Tapatios Markets were sent to Mexico.
[2] Approximately 15% of the total wires sent from the Los Tapatios Markets were sent to Jalisco, and approximately 21% were sent to Michoacan.

know based on my training and experience that Jalisco and Michoacan are drug source states in Mexico.

b) All of the wire transfers were below $3,000 the MSB government ID threshold.

c) Approximately 453 of the wire transfers were between $500 and $2,999. The most common transaction amount, within the subset, was $1,000, which was sent 127 times during the period.[3]

d) A total of $559,830.00 dollars was wired from the Milton Freewater store during the relevant time frame.

29.     I reviewed Intermex wire transfer transaction records from JIMENEZ's Walla Walla business, in which JIMENEZ was the MSB agent, between March 31, 2017 and May 31, 2020. I identified the following patterns in the wire transfers, sent using Intermex, at the Walla Walla business:

a) Approximately 92% of the 28,780 total wire transfers were sent to Mexico.[1] Approximately 14% of the wire transfers sent went to Jalisco, Mexico and approximately 21% of the wire transfers sent went to Michoacan, Mexico.[2] I know based on my training and experience that Jalisco and Michoacan are drug source states in Mexico.

b) 99% of the wire transfers were below $3,000 the MSB government ID threshold. 14 of the 30,203 wires transfers were sent above the $3,000 reporting threshold.

---

[3] Approximately 1,657 of the total wires of $1,000 were sent from the Los Tapatios Markets (both stores).
[1] A total of 30,203 wires were sent from the Los Tapatios Market in Walla Walla and Milton-Freewater. Approximately 94% of total wires sent from the Los Tapatios Markets were sent to Mexico.
[2] Approximately 15% of the total wires sent from the Los Tapatios Markets were sent to Jalisco, and approximately 21% were sent to Michoacan.

c) Approximately 5,412 of the wire transfers were between $500 and $2,999. The most common transaction amount, within the subset, was $1,000, which was sent 1,530 times during the period.[3] Approximately 154 of the wire transfers were $2,000.

d) A total of $8,585,293.00 dollars was wired from the Walla Walla store during the relevant time frame.

30.     I know based on my training and experience that JIMENEZ's businesses are located in communities with many people that work in seasonal agricultural work. I spoke with a representative from Intermex,that said in general, Intermex agents that operate in agricultural communities in Oregon and Washington send more wires in the summer because of the increased agricultural and construction work. Table 2 is a summary of wire transfers sent from the Los Tapatios Market Milton-Freewater businesses, per month, between 2017 and May 2020. Based on my training and experience, I would expect to see more seasonal variation between wires sent in the summer and wires sent in the winter. For example, the Milton-Freewater Los Tapatios business processed 53 wires in May of 2020 and 52 wires in November of 2019.

| Table 2 | | |
|---------|-------|------------|
| Year | Month | Wires Sent |
| 2017 | July | 11 |
| 2017 | August | 32 |
| 2017 | September | 32 |
| 2017 | October | 39 |
| 2017 | November | 27 |
| 2017 | December | 38 |
| 2018 | January | 23 |
| 2018 | February | 18 |
| 2018 | March | 42 |
| 2018 | April | 31 |
| 2018 | May | 33 |
| 2018 | June | 93 |

[3] Approximately 1,657 of the total wires of $1,000 were sent from the Los Tapatios Markets.

| 2018 | July | 37 |
|------|------|-----|
| 2018 | August | 48 |
| 2018 | September | 48 |
| 2018 | October | 45 |
| 2018 | November | 31 |
| 2018 | December | 38 |
| 2019 | January | 40 |
| 2019 | February | 34 |
| 2019 | March | 38 |
| 2019 | April | 39 |
| 2019 | May | 48 |
| 2019 | June | 70 |
| 2019 | July | 44 |
| 2019 | August | 36 |
| 2019 | September | 43 |
| 2019 | October | 47 |
| 2019 | November | 52 |
| 2019 | December | 43 |
| 2020 | January | 30 |
| 2020 | February | 33 |
| 2020 | March | 52 |
| 2020 | April | 37 |
| 2020 | May | 53 |
| Average | | 40 |

31.     Los Tapatios Market in Milton-Freewater is one of six non-bank MSBs, located Milton-Freewater, that provided international wire transfer services between 2017 and 2020.  Los Tapatios Market in Walla Walla is one of three non-bank MSBs located in Walla Walla that provided international wire transfer services between 2017 and 2020.

32.     I spoke with a representative from Intermex that said most customers send about two wires per month.  I know from my training and experience that many people are paid in consistent intervals, weekly, bi-weekly, or monthly.   JIMENEZ's businesses sent a large volume of wire transfers and amount of money throughout the month. JIMENEZ's businesses sent wires consistently throughout most months. Based on my training and experience, JIMENEZ's frequency of wire transfers during any given month is inconsistent with the industry and may be

**Page 13 —Affidavit of Special Agent Raymon Gragg          USAO Version Rev. July 2015**

an indicator of money laundering activity. For example, in July of 2019 JIMENEZ's businesses sent an average of 35 wires per day, and on 25 of the 31 days in July, JIMENEZ's businesses wired at least 26 wires or about 75% of the average wire transfer activity.

33.     I reviewed all of the wire transfers sent from JIMENEZ's businesses in Milton-Freewater and Walla Walla over a 3 year period spanning March 31, 2017 to May 31, 2020. In my review, I identified clusters of wires that were sent in rapid succession, were equal or greater than $500, and that were sent to Mexico. Based on my training and experience, these factors taken together suggest that the wires may be linked to money laundering and are considered suspicious. I identified **more than 750 examples** of wire transfers that were equal or greater than $500, and were sent to Mexico, and were sent less than 10 minutes before or after another qualifying wire transfer.[4] The suspicious clusters of wires occurred approximately one or more times per week, consistently between March 31, 2017 and May 31, 2020.

34.     Table 3 contains data from an example of a suspicious cluster from the Walla Walla store. Here, two wire transfers were sent from JIMENEZ's Walla Walla store on December 3, 2019 three minutes apart.

| Table 3 | | | | | | |
|---|---|---|---|---|---|---|
| **Send Date & Time (EST)** | **MTCN** | **Intermex Agent** | **Paying Agent State** | **Payee Name** | **Sender Name** | **Amount** |
| 12/3/19 9:24 PM | 018120842222 | Los Tapatios Market Walla Walla | Michoacan | Anita Lugo Rodriguez | Jose Ignacio Sanchez Oribio | $ 1,000.00 |
| 12/3/19 9:27 PM | 018120842324 | Los Tapatios Market Walla Walla | Michoacan | Anita Lugo Rodriguez | Adriana Tello Coria | $ 1,000.00 |

---

[4] The majority of the 750 examples consisted of clusters of two wire transfers. Other clusters consisted of three or four wire transfers.

**Page 14 —Affidavit of Special Agent Raymon Gragg          USAO Version Rev. July 2015**

35.     I believe that this cluster represents a potential example of the "Many to Many" money laundering process because:

    a) The wire records indicate that two separate people sent identical sums of money to the same person in Michoacan. None of the surnames match.

    b) The address entered for Jose Ignacio Sanchez Oribio, listed as 107 Williak St., Walla Walla, WA, is not a real address.

    c) I reviewed JIMENEZ's deposits to the Los Tapatios Columbia Bank accounts ending 4962 and 4970, in the weeks before and after these transactions. No checks written to or from Jose Ignacio Sanchez Oribio or Anita Lugo Rodriguez appear in the bank records.

    d) I reviewed Intermex records from the CheckDirect terminal at JIMENEZ's Los Tapatios businesses. No checks were used to purchase wire transfers via CheckDirect from Jose Ignacio Sanchez Oribio or Anita Lugo Rodriguez.

    e) The absence of a check from these individuals suggests that the wire transfers were funded with cash.

    f) The transactions appear structured to avoid potential MSB reporting requirements.

    g) No report of suspicious activity (structuring) was filed on this transaction.

36.     Table 4 contains data from an example of a suspicious cluster from the Walla Walla store. Here, two wires transfers were sent from JIMENEZ's Walla Walla store on October 30, 2019 two minutes apart.

/ / /

/ / /

**Page 15 —Affidavit of Special Agent Raymon Gragg**        **USAO Version Rev. July 2015**

| Table 4 | | | | | | |
|---|---|---|---|---|---|---|
| Send Date & Time (EST) | MTCN | Intermex Agent | Paying Agent State | Payee Name | Sender Name | Amount |
| 10/30/19 8:31 PM | 67199172688 | Los Tapatios Market Walla Walla | Michoacan | Blanca Celia Medina Toscano | Moises Soto Colin | $ 1,000.00 |
| 10/30/19 8:33 PM | 67199172698 | Los Tapatios Market Walla Walla | Michoacan | Bertha Alicia Toscano Medina | Leticia Castillo | $ 1,000.00 |

37.      I believe that this cluster represents a potential example of the "Many to Many"
money laundering process because:

    a)  The wire records indicate that two separate people sent identical sums of money
to two people in Michoacan.  None of the surnames match.

    b)  I reviewed JIMENEZ's deposits to the Los Tapatios Columbia Bank accounts
ending 4962 and 4970, in the weeks before and after these transactions.  No
checks written to or from Moises Soto Colin and Leticia Castillo appear in the
bank records.

    c)  I reviewed Intermex records from the CheckDirect terminal at JIMENEZ's Los
Tapatios businesses.  No checks were used to purchase wire transfers via
CheckDirect from Moises Soto Colin and Leticia Castillo.

    d)  The absence of a check from these individuals suggests that the wire transfers
were funded with cash.

38.      Table 5 contains data from an example of a suspicious cluster from the Walla
Walla store.  Here, two wire transfers were sent from JIMENEZ's Walla Walla store on
September 29, 2019 seven minutes apart.

| Table 5 | | | | | | |
|---|---|---|---|---|---|---|
| Send Date & Time (EST) | MTCN | Intermex Agent | Paying Agent State | Payee Name | Sender Name | Amount |
| 9/29/19 5:07 PM | N306995563 | Los Tapatios Market Walla Walla | Michoacan | Rosa Maria Martinez Farias | Maria Guadaloupe Escalante | $ 2,000.00 |
| 9/29/19 5:14 PM | N306998660 | Los Tapatios Market Walla Walla | Michoacan | Olivera Morfin Rosalba | Moises Escalante Escalante | $ 2,000.00 |

39.     I believe that this cluster represents a potential example of the "Many to Many" money laundering process because:

    a) The wire records indicate that two separate people sent identical sums of money to two people in Michoacan.

    b) I reviewed JIMENEZ's deposits to the Los Tapatios Columbia Bank accounts ending 4962 and 4970, in the weeks before and after these transactions. No checks written to or from Maria Guadalupe Escalante and Moises Escalante Escalante appear in the bank records.

    c) I reviewed Intermex records from the CheckDirect terminal at JIMENEZ's Los Tapatios businesses. No checks were used to purchase wire transfers via CheckDirect from Maria Guadalupe Escalante and Moises Escalante Escalante.

    d) The absence of a check from these individuals suggests that the wire transfers were paid for in cash.

40.     Table 6 contains data from an example of a suspicious cluster from the Milton-Freewater store. Here, two wire transfers sent from JIMENEZ's Milton-Freewater business on September 18, 2019 one minute apart.

/ / /

**Page 17 —Affidavit of Special Agent Raymon Gragg**          **USAO Version Rev. July 2015**

**Table 6**

| Send Date & Time (EST) | MTCN | Intermex Agent | Paying Agent State | Payee Name | Sender Name | Amount |
|---|---|---|---|---|---|---|
| 9/18/19 7:25 PM | 1115197392 | Los Tapatios Market Milton-Freewater | Michoacan | Karina Meza Rodriguez | Jacqueline Lara Medina | $ 1,220.00 |
| 9/18/19 7:26 PM | 1115197422 | Los Tapatios Market Milton-Freewater | Michoacan | Martha Lara Medina | Fernando Lemus | $ 1,220.00 |

41.     I believe that this cluster represents a potential example of the "Many to Many" money laundering process because:

a) The wire records indicate that two separate people sent identical sums of money to two people in Michoacan.

b) I reviewed JIMENEZ's deposits to the Los Tapatios Columbia Bank accounts ending 4962 and 4970, in the weeks before and after these transactions. No checks written to or from Jacqueline Lara Medina or Fernando Lemus appear in the bank records.

c) I reviewed Intermex records from the CheckDirect terminal at JIMENEZ's Los Tapatios businesses. No checks were used to purchase wire transfers via CheckDirect from Jacqueline Lara Medina or Fernando Lemus.

d) The absence of a check from these individuals suggests that the wire transfers were paid for in cash.

e) The transactions appear structured to avoid potential reporting requirements.

f) No report of suspicious activity (structuring) was filed on this transaction.

/ / /

/ / /

**Page 18 —Affidavit of Special Agent Raymon Gragg          USAO Version Rev. July 2015**

42.     Table 7 contains data from an example of a suspicious cluster from the Milton-Freewater. Here, two wire transfers were sent from JIMENEZ's Milton-Freewater store on September 8, 2017 within the same minute.

| Table 7 | | | | | | |
|---|---|---|---|---|---|---|
| Send Date & Time (EST) | MTCN | Intermex Agent | Paying Agent State | Payee Name | Sender Name | Amount |
| 9/8/17 7:19 PM | N198955612 | Los Tapatios Market Milton-Freewater | Jalisco | Johanna Soto Acosta | Juan Miguel Arambula Silva | $ 1,134.00 |
| 9/8/17 7:19 PM | N198955672 | Los Tapatios Market Milton-Freewater | Jalisco | Manuel Silva Aguirre | Hector Emilio Silva Ruelas | $ 1,000.00 |

43.     I believe that this cluster represents a potential example of the "Many to Many" money laundering process because:

    a)  The wire records indicate that two separate people sent money to two people in Jalisco. None of the surnames match.

    b)  The address entered for Juan Miguel Arambula Silva of 84085 Hwy 11 Milton-Freewater, OR is not a real address.

    c)  I reviewed JIMENEZ's deposits to the Los Tapatios Community Bank accounts ending 8965 and 8973, in the weeks before and after these transactions. No checks written to or from Juan Miguel Arambula Silva or Hector Emilio Silva Ruelas appear in the bank records.

    d)  I reviewed Intermex records from the CheckDirect terminal at JIMENEZ's Los Tapatios businesses. No checks were used to purchase wire transfers via CheckDirect from from Juan Miguel Arambula Silva or Hector Emilio Silva Ruelas.

**Page 19 —Affidavit of Special Agent Raymon Gragg          USAO Version Rev. July 2015**

e)  The absence of a check from these individuals suggests that the wire transfers were paid for in cash.

44.     Table 8 contains data from an example of a suspicious cluster from the Milton-Freewater store. Here, two wire transfers were sent from JIMENEZ's Milton-Freewater store on January 7, 2019 four minutes apart.

| Table 8 | | | | | | |
| Send Date & Time (EST) | MTCN | Intermex Agent | Paying Agent State | Payee Name | Sender Name | Amount |
| --- | --- | --- | --- | --- | --- | --- |
| 1/7/19 2:49 PM | 197559048 | Los Tapatios Market Milton-Freewater | Jalisco | Julia Rodriguez | Rigoberto Amaral Hernandez | $ 1,000.00 |
| 1/7/19 2:53 PM | 197559487 | Los Tapatios Market Milton-Freewater | Jalisco | Julia Rodriguez | Rigoberto Amaral Hernandez | $ 1,000.00 |

45.     I believe that this cluster represents a potential example of the "Many to Many" money laundering process because:

a)  The wire records indicate that one person sent two wires to the same person in Jalisco, but none of the surnames match.

b)  I reviewed JIMENEZ's deposits to the Los Tapatios Community Bank accounts ending 8965 and 8973, in the weeks before and after these transactions. No checks written to or from Rigoberto Amaral Hernandez appear in the bank records.

c)  I reviewed Intermex records from the CheckDirect terminal at JIMENEZ's Los Tapatios businesses. No checks were used to purchase wire transfers via CheckDirect from Rigoberto Amaral Hernandez.

d)  The absence of a check from these individuals suggests that the wire transfers were paid for in cash.

e)   The transactions appear structured to avoid potential reporting requirements.

f)   No report of suspicious activity (structuring) was filed on this transaction.

### Results of June 24, 2020 Search

46.   Based on my training and experience I have become familiar with methods used by money launderers to smuggle, safeguard, collect and launder drug proceeds.

47.   Money launderers for drug traffickers amass large proceeds, including currency and items of value, such as jewelry, from the illegal sale of controlled substances that they attempt to legitimize.   To accomplish these goals, drug traffickers launder money through money services businesses.   Persons involved in money laundering keep records relating to these activities for future reference, including Federal and State tax records; loan records; mortgages, deeds, titles, certificates of ownership, and registration of documents; records disclosing investments and securities; safe deposit box rental records and keys and photographs.   I know from my training and experience that items of value are often concealed by persons involved in money laundering from drug trafficking inside of safes, lock boxes, and other secure locations within their residences, outbuildings, and vehicles.

48.   I know that money launderers use mobile electronic devices including cellular telephones, for ready access to their suppliers and clientele for the purpose of maintaining their illegal business. Such equipment often contains recorded evidence of these illegal activities.

49.   I know that money launderers for drug traffickers frequently try to conceal their identities by using fraudulent names and identification cards. Once identities have been created or stolen from other citizens, clandestine manufacturers will use those identifications to falsify records such as Department of Motor Vehicle and phone records for the purpose of theft of services and to evade detection by law enforcement.

**Page 21 —Affidavit of Special Agent Raymon Gragg**          **USAO Version Rev. July 2015**

50.     I know that money launders for drug traffickers often have firearms or other weapons in their possession, that is, on their person, and/or at their businesses, residences, storage lockers, and/or vehicles, firearms, and other weapons, which are used to protect and secure their property.

51.     I am aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, illegal trafficking in narcotics. One of the roles of money launderers for drug traffickers is to conceal the unexplained wealth from illegal trafficking.

52.     On June 24, 2020, during the execution of the warrant of for evidence of crimes related to food stamp retailer fraud, officers developed the following additional information in support of the money laundering investigation:

53.     Pursuant to the search of JIMENEZ' person, agents with the Federal Bureau of Investigation fingerprinted JIMENEZ. Agent Sean Kennedy ran the fingerprints on a Mobile Biometric Application. The fingerprints matched Department of Homeland Security (DHS) records for a Oscar Jimenez-Medina, reported apprehended by DHS during an enforcement action on May 15, 2002. Based on this information, it appears JIMENEZ is in the United States illegally and is currently living under an assumed name.

**Suspicious Bag and Contents**

54.     At the time agents stopped JIMENEZ in his GMC Sierra to execute the warrant, JIMINEZ had this bag, and its contents, in his possession:

/ / /



55.     The bag contains bulk cash in the total amount of $21,791.00, some jewelry, receipts, and five cell phones.   Based on my training and experience, individuals who assist drug traffickers in money laundering will use multiple, and possible secret, cell phones to communicate with the drug traffickers and others who assist in coordinating the delivery of bulk cash or other aspects of the money laundering.

56.     JIMENEZ's regular personal cell phone was located separately on his person.

57.     A Walla Walla Police Officer who is a Certified Controlled Substance Dog Handler and his certified controlled substance detection dog, responded to the Milton Freewater Los Tapitos located at 84256 Highway 11. Detective Hubel with the Pendleton Police Department prepared a "line" of 6 boxes of similar size and appearance. The bag containing the banker bags of currency, 5 cellphones, jewelry, receipts and other items was placed underneath one of the 6 boxes. The Certified Controlled Substance Dog Handler and his certified controlled substance detection dog were not in the immediate area when Detective Hubel set up

the 6 boxes.  The Handler knew which box contained the bag.

58.     When they entered the area, the Certified Controlled Substance Dog Handler deployed his certified controlled substance detection dog on the line of six boxes. The Certified Controlled Substance Dog Handler told Detective Hubel that his certified controlled substance detection dog alerted, in the manner he is trained, to the presence of the odor of controlled substance on the box that concealed the bag containing the banker bags of currency, 5 cellphones, jewelry, receipts and other items.  The detection dog alerted two times, during separate trips down the line of boxes.  The certified controlled substance detection dog did not alert to any of the other five boxes in the line.  The Certified Controlled Substance Dog Handler and his certified controlled substance detection dog's qualifications and training, are set forth in Exhibit 2, attached hereto and incorporated herein.

59.     I know from my training and experience that certified controlled substance detection dogs are trained to react to the odor of controlled substances, and that such evidence may be found on drug proceeds or instrumentalities.   Based on the positive canine examination results and other observations discussed in more detail above, I have probable cause to believe, and do believe, that a search of the bag containing the banker bags of currency, 5 cellphones, jewelry, receipts and other items will yield evidence of contraband, fruits, and instrumentalities of violations of federal criminal money laundering statutes described above.

**Firearms**

60.     Based on my training and experience, I know that money launders for drug traffickers often have firearms or other weapons in their possession, that is, on their person, and/or at their businesses, residences, storage lockers, and/or vehicles, firearms, and other weapons, which are used to protect and secure their property.   During the search pursuant to the

**Page 24 —Affidavit of Special Agent Raymon Gragg**          **USAO Version Rev. July 2015**

warrant, the following firearms were located:

     a.     One (1) Colt 1911 .45 caliber pistol, serial no. 459614. Located in Jimenez's residence on top of a hutch. Reported stolen out of King County, Washington.

     b.     One (1) Smith and Wesson SD40 VE .40 caliber pistol, serial no. FYJ9394. Located in safe in Jimenez's business, Los Tapatios, Milton-Freewater, Oregon.

     c.     One (1) Taurus PT111 G2 9mm caliber pistol, serial no. T1091821. Located in safe in Jimenez's business, Los Tapatios, Milton-Freewater, Oregon. Reported stolen out of Milton-Freewater Police Department, Milton-Freewater, Oregon.

     d.     One (1) Ruger LC9s 9mm caliber pistol, serial no. 453-68087. Located in safe in Jimenez's business, Los Tapatios, Milton-Freewater, Oregon

## Conclusion

61.     Based on the foregoing, I have probable cause to believe that Miguel Jimenez has committed and is committing violations of **Title 18 U.S.C. § 1956(h)** (Money Laundering Conspiracy) and **Title 18 U.S.C. § 1956(a)(2)** (International Transportation Offense), and I believe there is probable cause to believe that evidence of violations of **Title 18 U.S.C. § 1956(h)** (Money Laundering Conspiracy) and **Title 18 U.S.C. § 1956(a)(2)** (International Transportation Offense), consisting of the items set forth in Attachment B (Items to be Sought and Seized) will be found in the black bag, its contents, and the firearms.

62.     I therefore request that the court issue a warrant authorizing a **seizure** of the above items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein. An affidavit in support of authority to **search** the items identified in Attachment B will be submitted at a later date.

63.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Donna Maddux, and AUSA Donna Maddux advised me that in her opinion the

**Page 25 —Affidavit of Special Agent Raymon Gragg**     **USAO Version Rev. July 2015**

affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

### Request for Sealing

64.    I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, and the requested search warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation

*Sworn by Phone IAW Fed. R. Crim P. 4.1*
RAYMON GRAGG
Special Agent, IRS-CI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _10:23_ a.m/p.m. on June _25_, 2020.

HONORABLE JOHN V. ACOSTA
United States Magistrate Judge

**Page 26 —Affidavit of Special Agent Raymon Gragg**          **USAO Version Rev. July 2015**

**ATTACHMENT A**

**Property to Be Searched**

The property to be searched is in evidence at the Oregon State Police Command Center, 618 Airport Road, Pendleton, OR, and described as follows:

1. The black bag and the contents of the black bag found in the blue 1994 GMC Sierra, bearing Oregon License Plate 561CET, assigned VIN (Vehicle Identification Number) No. 1GTGK29F2RE505579 on June 24, 2020, during the execution of Search Warrant 3:20-mc-609 A-4. The contents of the black bag include jewelry, five cellphones and U.S. currency, receipts and other documents and items.

   An image of the black bag and the items contained in the bag is provided below:



1. Colt 1911 .45 caliber pistol, serial no. 459614 found on June 24, 2020, during the execution of Search Warrant 3:20-mc-609 A-2 in Jimenez's residence on top of a hutch.



2. Taurus PT111 G2 9mm caliber pistol, serial no. T1091821 found during the execution of Search Warrant 3:20-mc-609 A-1 in a safe in Jimenez's business in Milton-Freewater, Oregon:



3. Smith and Wesson SD40 VE .40 caliber pistol, serial no. FYJ9394 found during the execution of Search Warrant 3:20-mc-609 A-1 in a safe in Jimenez's business in Milton-Freewater, Oregon:



4. Ruger LC9s 9mm caliber pistol, serial no. 453 found during the execution of Search Warrant 3:20-mc-609 A-1 in a safe in Jimenez's business in Milton-Freewater, Oregon:



                    USAO Version Rev. July 2015

## ATTACHMENT B

### Property to Be Seized

The items to be seized are those items in evidence at the Oregon State Police Command Center, 618 Airport Road, Pendleton, OR, found during the execution of Search Warrant 3:20-mc-609 A-1, Search Warrant 3:20-mc-609 A-2, and Search Warrant 3:20-mc-609 A-4 that contain evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C. § 1956(h) Money Laundering and 18 U.S.C. § 1956(a)(2) International Money Laundering.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrant. They are further described as follows:

1. The black bag and the contents of the black bag found in the blue 1994 GMC Sierra, bearing Oregon License Plate 561CET, assigned VIN (Vehicle Identification Number) No. 1GTGK29F2RE505579 on June 24, 2020, during the execution of Search Warrant 3:20-mc-609 A-4. The contents of the black bag include jewelry, five cellphones and U.S. currency in the amount of $21,791.00, receipts and other documents and items. An image of the black bag and the items contained in the bag is provided below:



2.  Colt 1911 .45 caliber pistol, serial no. 459614 found on June 24, 2020, during the execution of Search Warrant 3:20-mc-609 A-2 in Jimenez's residence on top of a hutch.



3.  Taurus PT111 G2 9mm caliber pistol, serial no. T1091821 found on June 24, 2020, during the execution of Search Warrant 3:20-mc-609 A-1 in a safe in Jimenez's business in Milton-Freewater, Oregon:



4.  Smith and Wesson SD40 VE .40 caliber pistol, serial no. FYJ9394 found on June 24, 2020, during the execution of Search Warrant 3:20-mc-609 A-1 in a safe in Jimenez's business in Milton-Freewater, Oregon:



5.  Ruger LC9s 9mm caliber pistol, serial no. 453 found on June 24, 2020, during the execution of Search Warrant 3:20-mc-609 A-1 in a safe in Jimenez's business in Milton-Freewater, Oregon:



AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The person of Miguel Jimenez, and the premises,<br>properties, and vehicles as described in Attachments A-1<br>through A-6 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.     3:20-mc-00609  A-F

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

as described in Attachments A-1 through A-6 hereto,

located in the _____ District of _____Oregon_____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

Certified to be a true and correct
copy of original filed in this District

Dated: __06/18/2020__

**MARY L. MORAN, Clerk of Court**
U.S. District Court of Oregon
By: **s/J. Prowell**

Pages ____1____ Through ____34____

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 7 U.S.C. § 2024 | Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits; |
| 18 U.S.C. §§ 641, 1343 | Theft of Government Funds; Wire Fraud. |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
John Sherman, USDA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone at __12:32__ a.m./p.m. *(specify reliable electronic means).*

Date: ___06/18/2020___

_____
*Judge's signature*

City and state:  Portland, Oregon

Hon. Stacie F. Beckerman, United States Magistrate Judge
*Printed name and title*

**Exhibit 1**
**Page 1 of 79**

DISTRICT OF OREGON, ss:          AFFIDAVIT OF JOHN E. SHERMAN

## Affidavit in Support of an Application Under Rule 41
## for a Search Warrant

I, John E. Sherman, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Office of Inspector General, U.S. Department of Agriculture.   I have been so employed since February 6, 2005.   I am responsible for conducting criminal investigations pertaining to fraud, waste, and abuse in connection with programs administered by the United States Department of Agriculture (USDA) and enforcement of 7 U.S.C. § 2024, related to Food Stamp Fraud.   I have successfully completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.   I have received additional training in financial investigations from FLETC. I have also received additional training in interviews and interrogations, covert electronic surveillance, and other law enforcement skills from a variety of federal, local and state law enforcement entities.   I have previously served as a Special Agent with the Naval Criminal Investigative Service (NCIS).   I have also previously served as an Intelligence Research Specialist for the Drug Enforcement Administration, a Correctional Officer for the State of Oregon, and a Reserve Deputy for the Yamhill County Sheriff's Office.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at the following locations (hereinafter "Premises"):

/ / /

**Page 1 – Affidavit of John E. Sherman**               **USAO Version Rev. July 2015**

Exhibit 1
Page 2 of 79

A-1 The commercial property located at 84256 Highway 11, Milton-Freewater, Oregon

A-2 The residential property located at 616 NE 9th Court, Milton-Freewater, Oregon

A-3 The 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800

A-4 The 1994 GMC Sierra bearing Oregon License Plate 561CET

A-5 The 2010 Nissan Rogue bearing Washington License Plate 769ZVZ

A-6 The person of Miguel Jimenez

as described in Attachments A-1 through A-6 hereto, for evidence, contraband, fruits, and

instrumentalities of violations of 7 U.S.C. § 2024 (Unauthorized Use, Transfer, Acquisition,

Alteration, or Possession of Benefits), 18 U.S.C. § 641 (Theft of Government Funds), and 18

U.S.C. § 1343 (Wire Fraud).   As set forth below, I have probable cause to believe that such

property and items, as described in Attachment B, are currently located at the Premises.

3.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.   The facts

set forth in this affidavit are based on my own personal knowledge, knowledge obtained from

other individuals during my participation in this investigation, including other law enforcement

officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described

herein, and information gained through my training and experience.

### Background:   The Federal SNAP Program

4.      The Supplemental Nutrition Assistance Program, known as SNAP, is a federal

program that provides nutrition benefits to low-income individuals and families.   SNAP is

/ / /

**Page 2 – Affidavit of John E. Sherman**                    **USAO Version Rev. July 2015**

Exhibit 1
Page 3 of 79

administered by the United States Department of Agriculture, under the Food and Nutrition

Service.   SNAP benefits are limited for use at stores to purchase approved food items.

     5.      In 1998, the United States Department of Agriculture (USDA), through the State

of Oregon Department of Human Services (DHS) Children, Adults and Families Division (CAF),

converted from a traditional paper food stamp coupon system to what is known as an Electronic

Benefit Transfer (EBT) card.   The EBT card is an access device within the meaning of Title 18,

United States Code, Section 1029(e)(1), in that it is a card containing a series of numbers which

can be used to obtain things of value, specifically, eligible food items under the SNAP program.

     6.      As of October 1, 2008, the official name of the federal Food Stamp Program

changed to the Supplemental Nutrition Assistance Program (SNAP).   Most people continue to

refer to the program and related benefits as the Food Stamp Program and food stamp benefits

respectively.

     7.      To become eligible to participate in the SNAP program as an authorized retailer,

store owners are required to complete, sign, and submit to the USDA Food and Nutrition Service

a Food Stamp Program Application for Stores.   To access the electronic funds on the EBT card,

authorized vendors are provided with a "point of sale device" (POS), which serves to debit

recipients' SNAP account for the cash value of eligible food items purchased.

     8.      To administer Federal program benefits, the State of Oregon DHS uses an online

magnetic card EBT system.   Online systems use the existing card technology developed by

financial institutions and credit card companies.   DHS provides a plastic EBT card, also referred

to as the Oregon Trail Card, to SNAP recipients.   The EBT card (the Oregon Trail Card) has a

magnetic strip containing basic information necessary to make food purchases.   At an authorized

**Page 3 – Affidavit of John E. Sherman**          **USAO Version Rev. July 2015**

**Exhibit 1
Page 4 of 79**

vendor, the recipient presents the card and enters a personal identification number (PIN) into a POS terminal.  The POS terminal communicates with a central database that maintains recipient account balance information.  The central database verifies the amount of benefits available, authorizes the transaction, and deducts the purchase amount from the recipient's account.  The system also calculates cumulative SNAP sales for each retailer, and authorizes payment electronically to the retailer's bank account.  In Oregon, EBT transactions involve interstate transfer of information via wire, specifically the transfer of electronic information to and from the states of Oregon and Wisconsin and/or Oregon and Arizona, which are the location of the primary computer servers that service the SNAP program for Oregon and several other states.  The SNAP Program is funded by the USDA, and administered through the State of Oregon DHS.

9.      The eligibility determination and issuance of benefits are regulated by Oregon DHS policy, Oregon Revised Statues and Oregon Administrative Rule and Code of Federal Regulations.   The amount of SNAP benefits received by a recipient or household is based on a means test, including an income and expense analysis.   Benefits are typically issued monthly and are directly deposited to the SNAP recipient's EBT card account.

### Applicable Law

10.      The laws at issue in this investigation are as follows:

**a.      Title 7 U.S.C. § 2024(b)(1):** Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, makes it illegal to use, transfer, acquire, or possess supplemental nutrition assistance benefits in any manner contrary to that chapter or the regulations issued pursuant to that chapter.

b.      **Title 7 U.S.C. § 2024(c)**: Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, makes it a felony for an individual to present, or cause to be presented, supplemental nutrition assistance benefits for payment or redemption of a value of $100 or more.

c.      **Title 18 U.S.C. § 641**: Public Money, Property or Records (Theft of Government Funds), makes it illegal to embezzle, steal, purloin, or knowingly convert to his use or the use of another, any record, voucher, money or thing of value of the United States or any Department or Agency thereof, or any property made or being made under contract for the United States or any Department of Agency thereof.

d.      **Title 18 U.S.C. § 1343**: Fraud by Wire makes it illegal for whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses or representations, to transmit or causes to be transmitted by means of wire in interstate or foreign commerce, any writings, signals, signs, pictures or sounds, for the purpose of executing such scheme or artifice.

## <u>Statement of Probable Cause</u>

11.     I, with the assistance of the Internal Revenue Service and local law enforcement officers, have been investigating Miguel Angel Jimenez (DOB 9/20/1964) of Milton-Freewater, Oregon, for his involvement in criminally defrauding the United States through stealing public money from the SNAP Program in Oregon.   Jimenez has no known criminal history.

12.     According to documents submitted to the US Department of Agriculture, Food and Nutrition Service, Miguel Jimenez is the owner/operator of Los Tapatios Market, 84256 Highway 11, Milton-Freewater, Oregon, which is a local Hispanic-themed grocery store and

meat market.   Los Tapatios Market is an authorized SNAP retailer.   Miguel Jimenez's wife

(Co-conspirator 1 or CC1) and his daughter (Co-conspirator 2 or CC2) are listed as co-owners of

the Los Tapatios Market with Miguel Jimenez. On May 30, 2018, Co-Conspirator 3 (or CC3),

listed as the authorized representative for Los Tapatios, electronically submitted the

Supplemental Nutrition Assistance Program Application for Stores for Los Tapatios in Milton-

Freewater, Oregon.   The application lists the email address for the store as

los_tapatios@outlook.com.   Miguel Jimenez is also the listed co-owner of Los Tapatios Market

Llc, 114 S. 9th Ave, Walla Walla, Washington 99362, along with CC1. (Both of the Los Tapatios

Markets are also known as Carniceria Los Tapatios and Los Tapatios Market Llc).

13.     Miguel Jimenez unlawfully permits persons to use their SNAP benefits at his

business terminal in Milton-Freewater in return for U.S. Currency, at an exchange rate of

approximately fifty (50) cents per one (1) dollar charged to the SNAP account.   It is unlawful to

exchange SNAP benefits for cash per 7 U.S.C. § 2024 (Supplemental Nutrition Assistance

Program – Violations and Enforcement).   Miguel Jimenez paid one individual to turn over

possession of their EBT Card to Jimenez in order to permit Jimenez to unlawfully use the SNAP

benefits at Jimenez's discretion. Miguel Jimenez paid the individual fifty (50) cents per one (1)

dollar.   As discussed below, the individual became a Cooperating Person in the investigation.

14.     Miguel Jimenez and his wife, CC1, reside at 616 NE 9th Court, Milton-Freewater,

Oregon.   Miguel Jimenez is the registered owner of the 2007 Chevrolet Avalanche bearing

Oregon License Plate CU11800 and the 1994 GMC Sierra bearing Oregon License Plate

561CET, based on records from the Oregon State Department of Motor Vehicles. Miguel

/ / /

**Page 6 – Affidavit of John E. Sherman**                    **USAO Version Rev. July 2015**

**Exhibit 1
Page 7 of 79**

Jimenez is also the registered owner of the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ, based on records from the Washington State Department of Licensing.

15.     This investigation involves the use of a Cooperating Person (CP1).   CP1 was identified as a SNAP recipient conducting suspicious financial transactions at Los Tapatios. CP1's EBT transaction history showed large dollar SNAP transactions being conducted at Los Tapatio as well as SNAP transactions that were done in even amounts.   Based on my experience and training, these are often indicators of SNAP trafficking.   Blue Mountain Enforcement Narcotics Team (BENT) Detectives and I interviewed CP1.   CP1 confessed to exchanging SNAP benefits for cash with Jimenez on many occasions for more than two years.   CP1 identified Jimenez as the person that always conducted the transactions and that Jimenez usually provide CP1 with half of the benefits' value in cash.   CP1 agreed to assist investigators in hopes of receiving consideration for his/her unlawful conduct related to the selling of his/her SNAP benefits.   We did not make any promises of consideration to CP1.   BENT later signed CP1 up as a Confidential Reliable Informant (CRI). As of June 4, 2020, BENT has paid CP1 $690 in compensation for his contributions to this investigation.   CP1 has no known criminal history.

At the time of the interview, on April 9, 2019, CP1's SNAP Electronic Balance Transfer (EBT) card was in Jimenez's possession.   CP1 told us that approximately 3 days before the interview, CP1 sold $400 worth of benefits to Jimenez, who paid CP1 a total of $200 in cash ($150 on one day and $50 the following day).   Acting on CP1's own, without instructions from law enforcement officers, CP1 retrieved the EBT card from Jimenez before Jimenez had used the

/ / /

/ / /

**Page 7 – Affidavit of John E. Sherman**                    **USAO Version Rev. July 2015**

**Exhibit 1
Page 8 of 79**

full $400 amount of benefits.   Jimenez later asked CP1 to give him the EBT card, so that he could use the remaining benefits.   CP1 told Jimenez that CP1 already used the benefits and would have to make up the difference to Jimenez the following month.

16.     As part of this investigation, officers provided undercover Oregon Trail EBT cards (UC EBT) to the CP1.   The UC EBT cards were pre-loaded with SNAP benefits. As detailed in the chart below, on nine (9) occasions, Jimenez paid the CP1 for SNAP benefits on the UC EBT cards inside the Los Tapatios Market.   On each occasion, the CP1 was searched before and after the transaction, and followed to and from the market. In each case, officers found no cash or contraband on the CP1. On each occasion, Jimenez purchased the SNAP benefits on the UC EBT card from the CP1.   Jimenez purchased UC EBT SNAP benefits totaling $3,175.31 in nine transactions.   Jimenez paid cash to CP1 when purchasing the SNAP benefits on the UC EBT card on each of the 9 occasions. The amount Jimenez paid CP1 for the SNAP benefits on the card is shown in the chart below under the column titled "Amount of Cash."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 8 – Affidavit of John E. Sherman**                    **USAO Version Rev. July 2015**

**Exhibit 1
Page 9 of 79**

| DATE | CARD NUMBER | AMOUNT OF CASH | AMOUNT OF SNAP USED | WHEN USED | WHERE USED | HOW MUCH PER TRANSACTION |
|---|---|---|---|---|---|---|
| 5/8/2019 | 5076930055412494 | $20 (CP1 owed $220 to Jimenez) | $336.34 | | | |
| | | | | 5/14/2019 | WALMART PENDLETON | $92.91 |
| | | | | 5/14/2019 | WALMART PENDLETON | $243.43 |
| | | | | | Total: | $336.34 |
| | | | | | | |
| 5/21/2019 | 5076930055412494 | $50 | $104.36 | | | |
| | | | | 5/30/2019 | LOS TAPATIOS | $69.64 |
| | | | | 5/31/2019 | LOS TAPATIOS | $34.72 |
| | | | | | Total: | $104.36 |
| | | | | | | |
| 7/18/2019 | 5076930057731735 | $200 | $501.75 | | | |
| | | | | 7/30/2019 | LOS TAPATIOS | $198.87 |
| | | | | 7/30/2019 | WALMART COLLEGE PLACE | $205.65 |
| | | | | 7/31/2019 | WALMART COLLEGE PLACE | $71.40 |
| | | | | 7/31/2019 | WALMART COLLEGE PLACE | $25.83 |
| | | | | | Total: | $501.75 |
| | | | | | | |
| 8/13/2019 | 5076930057731735 | $200 | $506.45 | | | |
| | | | | 8/30/2019 | WALMART COLLEGE PLACE | $142.44 |
| | | | | 8/30/2019 | WAYSIDE MARKET | $13.95 |
| | | | | 8/30/2019 | LOS TAPATIOS | $176.82 |
| | | | | 8/31/2019 | LOS TAPATIOS | $173.24 |
| | | | | | Total: | $506.45 |
| | | | | | | |
| 9/30/2019 | 5076930057731735 | $100 | $296.99 | | | |
| | | | | 9/30/2019 | WALMART PENDLETON | $182.54 |
| | | | | 9/30/2019 | WALMART PENDLETON | $114.45 |
| | | | | | Total: | $296.99 |
| | | | | | | |
| 11/13/2019 | 5076930057731735 | $200 | $398.93 | | | |
| | | | | 11/18/2019 | WALMART PENDLETON | $151.68 |
| | | | | 11/18/2019 | WALMART PENDLETON | $133.74 |
| | | | | 11/28/2019 | LOS TAPATIOS | $85.21 |
| | | | | 12/1/2019 | LOS TAPATIOS | $28.30 |
| | | | | | Total: | $398.93 |
| | | | | | | |
| 12/3/2019 | 5076930057731735 | $250 | $509.58 | | | |
| | | | | 12/15/2019 | LOS TAPATIOS | $235.84 |
| | | | | 12/30/2019 | WALMART PENDLETON | $153.69 |
| | | | | 12/30/2019 | WALMART PENDLETON | $120.05 |
| | | | | | Total: | $509.58 |
| | | | | | | |
| 1/21/2020 | 5076930057731735 | $170 | $354.25 | | | |
| | | | | 1/22/2020 | WALMART PENDLETON | $243.20 |
| | | | | 1/26/2020 | LOS TAPATIOS | $95.28 |
| | | | | 1/31/2020 | WAYSIDE MARKET | $9.57 |
| | | | | 1/31/2020 | LOS TAPATIOS | $6.20 |
| | | | | | Total: | $354.25 |
| | | | | | | |
| 2/25/2020 | 5076930057731735 | $125 | $253.89 | | | |
| | | | | 2/28/2020 | WALMART PENDLETON | $166.66 |
| | | | | 2/28/2020 | LOS TAPATIOS | $87.23 |
| | TOTAL: | $1315 ($220 additional debt) | $3,262.54 | | Total: | $253.89 |

17.     As shown in the chart above, on occasion the UC EBT card was used at Los Tapatios on eleven (11) occasions.   Based on my experience and training, a retailer trafficking in SNAP benefits will often charge the EBT card using his/her own terminal.   The retailer

**Page 9 – Affidavit of John E. Sherman**               **USAO Version Rev. July 2015**

Exhibit 1
Page 10 of 79

knows that he/she will be paid by FNS for the SNAP funds via electronic deposit into his/her

own specified bank account.   Based on my training and experience, after swiping the EBT card

at the retailers' SNAP terminal, the retailer will typically pay the cardholder half of the card

value (or the agreed upon exchange amount) of the SNAP benefits and retain half of the benefits

himself/herself.

In this case, on most occasions, Jimenez paid CP1 for the SNAP benefits in advance of

use of the card.   Jimenez then used the UC EBT card at retailers (particularly Wal-Mart in

Pendleton, Oregon and College Place, Washington) or in his own market.   No food products

were provided to CP1 when Jimenez swiped the UC EBT card at his own market.   As noted

above, this practice is simply a means for Jimenez to obtain the SNAP funds by having them

deposited in his account.

18.    BENT Detectives contacted security staff for both the Pendleton Wal-Mart and

College Place Wal-Mart after Jimenez used the UC EBT at their stores.   Wal-Mart security staff

provided the Detectives with surveillance footage showing the usage of the UC EBT cards.   The

BENT Detectives reviewed the surveillance footage to identify the person using the UC EBT

cards in each transaction.

Based on my training and experience, retail store owners who engage in SNAP

trafficking use illegally acquired SNAP benefits to purchase inventory for their own store at a

discounted cost to the retail store owner.

19.    BENT Detectives identified Miguel Jimenez using the UC EBT card to purchase

items at the Pendleton Wal-Mart on 5/14/2019, 9/30/2019, 11/18/2019, 12/30/2019, 1/22/2020,

/ / /

**Page 10 – Affidavit of John E. Sherman**                **USAO Version Rev. July 2015**

**Exhibit 1
Page 11 of 79**

and 2/28/2020.   They also identified Miguel Jimenez using the UC EBT card at the College

Place Wal-Mart on 7/30/2019 and 8/30/2019.

20.    The investigation determined that Jimenez has used other people's EBT cards to

purchase goods, although he is not the authorized user of the cards.   Investigators observed

Jimenez using other people's EBT cards without authorization as seen in the table below.

| DATE | NAME OF RECIP | STORE USED | TOTAL AMOUNT USED (sometimes two separate transactions conducted) |
|---|---|---|---|
| 5/26/2020 | CC4 | Pendleton Wal-Mart | $31.48 |
| 5/19/2020 | CC4 | College Place Wal-Mart | $136.17 |
| 4/22/2020 | CC5 | Pendleton Wal-Mart | $200.98 |
| 4/15/2020 | CC5 | Pendleton Wal-Mart | $219.50 |
| 4/7/2020 | CC4 | Pendleton Wal-Mart | $118.58 |
| 3/25/2020 | CC4 | Pendleton Wal-Mart | $116.16 |
| 2/18/2020 | CC6 | Pendleton Wal-Mart | $110.00 |
| 1/14/2020 | CC7 | College Place Wal-Mart | $186.10 |

**NISSAN ROGUE (769ZVZ) and CC1**

21.    On July 31, 2019, the UC EBT card was used two times at the College

Walmart.   A BENT Detective's review of the surveillance footage showed that at about 8:42

p.m., a dark colored SUV parked in the Wal-Mart parking lot.   A BENT Detective identified the

SUV as Miguel Jimenez's black Nissan Rogue, bearing Washington License Plate 769ZVZ.

Three women got out of the black Nissan Rogue and entered the Wal-Mart store.   The BENT

Detective identified two of the three women as CC1 and CC2.   He observed that the third

woman was an elderly Hispanic female.   When the three women entered the Wal-Mart store,

they shopped for items.   The elderly Hispanic female paid for items in her shopping cart with

the UC EBT card at about 9:19 p.m.   CC1 paid for the items in her shopping cart with cash.

**Exhibit 1**
**Page 12 of 79**

The three women left the Wal-Mart store and walked back to the black Nissan Rogue.   At approximately 9:28 p.m., after unloading the purchased items, CC1 and the elderly female re-entered the Wal-Mart store and began shopping again.   CC2 stayed at the black Nissan Rogue. At about 9:38 p.m., the elderly woman again used the UC EBT card at the card machine to purchase her items.   The two women returned to the black Nissan Rogue, and left.

22.     On August 1, 2019, BENT detectives sent CP1 to Los Tapatios, Milton-Freewater, to meet with Miguel Jimenez in order to retrieve the UC EBT card.   BENT Detectives searched CP1 and CP1's vehicle before the meeting and found no contraband or UC EBT card.   BENT Detectives kept CP1 under surveillance during the meeting, and they met with CP1 after the meeting.   CP1 told the BENT Detectives that Miguel Jimenez said that his wife (CC1) had the UC EBT card.   Jimenez told CP1 to come back in an hour.   BENT Detectives observed CC1 and another woman arrive at Los Tapatios in Jimenez's black Nissan Rogue (769ZVZ).

BENT Detectives again searched CP1 and CP1's vehicle before CP1 met with Jimenez, finding no contraband or UC EBT card.   BENT Detectives again kept CP1 under surveillance during the meeting, and they met with CP1 after the meeting.   CP1 said that CP1 saw CC1 take the UC EBT out of what looked like a bank bag and hand it to Miguel Jimenez.   Miguel Jimenez then gave the UC EBT card to CP1.   CP1 gave the BENT Detectives the UC EBT card.   BENT Detectives again searched CP1 and CP1's vehicle, finding no contraband or other EBT cards.

23.     On May 19, 2020, someone used an EBT card belonging to CC4 at the College Place, Washington, Wal-Mart.   During the course of this investigation, Miguel Jimenez has repeatedly used this card, although he is not an authorized user of this EBT card.   BENT

**Page 12 – Affidavit of John E. Sherman**          **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 13 of 79**

Detectives obtained surveillance video of the transaction from the College Place Wal-Mart.
Store surveillance video shows Miguel Jimenez arriving at the College Place Wal-Mart in the
black Nissan Rogue (769ZVZ).   Jimenez purchased items using the EBT card belonging to CC4
at approximately 9:03 a.m. for $88.57 and again at approximately 9:15am for $47.60.   Jimenez
loaded the items purchased with CC4's EBT card into the Nissan Rogue (769ZVZ).

**CHEVROLET AVALANCHE and GMC SIERRA**

24.    On November 8, 2019, a United States Magistrate Judge for the District of
Oregon authorized the installation and use of a tracking device on another vehicle Miguel
Jimenez uses, a white 2007 Chevrolet Avalanche, bearing Oregon License Plate CU11800,
assigned VIN No. 3GNFK12307G114966.   The tracking device was installed on the white 2007
Chevrolet Avalanche that day and was in continual use through June 2, 2020.   The United States
Magistrate Judge authorizes extensions of the tracking warrant on the white 2007 Chevrolet
Avalanche on December 19, 2019, January 29, 2020, March 11, 2020, and April 20, 2020.

25.    While monitoring the white 2007 Chevrolet Avalanche, investigators observed
that Jimenez was also using the blue 1994 GMC Sierra, bearing Oregon License Plate 561CET.
On February 11, 2020, a United States Magistrate Judge for the District of Oregon authorized the
installation and use of a tracking device on the blue 1994 GMC Sierra, bearing Oregon License
Plate 561CET, however, the warrant was never served due to issues related to the location of the
vehicle during the period authorized for installation.   The vehicle was parked in an area that was
likely to lead to the disclosure of the installation of the device.   On March 11, 2020, a United
States Magistrate Judge for the District of Oregon authorized the installation and use of a
tracking device on the blue 1994 GMC Sierra, bearing Oregon License Plate 561CET, and a

**Exhibit 1**
**Page 14 of 79**

renewal was signed on April 20, 2020.   The tracking device was installed on March 11, 2020

and was in continual use through June 3, 2020.

26.     During the course of this investigation, investigators observed Jimenez via the

tracking device, physical surveillance, and store surveillance using both the 2007 Chevrolet

Avalanche and the 1994 GMC Sierra to drive to the Wal-Mart locations in Pendleton, Oregon

and College Place, Washington, where he fraudulently used the UC EBT card and/or other

people's cards to conduct transactions.   The following chart shows which vehicle was used on

the date of the fraudulent transactions by Miguel Jimenez or CC1 to drive to the Wal-Mart in

either Pendleton or College Place.

| DATE | VEHICLE PLATE | VEHICLE MAKE | VEHICLE MODEL | STORE |
|------|---------------|--------------|---------------|-------|
| 5/26/2020 | 561CET | GMC | Sierra | Pendleton Wal-Mart |
| 5/19/2020 | 769ZVA | NISSAN | Rogue | College Place Wal-Mart |
| 4/22/2020 | 561CET | GMC | Sierra | Pendleton Wal-Mart |
| 4/7/2020 | 561CET | GMC | Sierra | Pendleton Wal-Mart |
| 3/25/2020 | CU11800 | CHEVROLET | Avalanche | Pendleton Wal-Mart |
| 2/28/2020 | 769ZVA | GMC | Sierra | Pendleton Wal-Mart |
| 1/22/2020 | CU11800 | CHEVROLET | Avalanche | Pendleton Wal-Mart |
| 1/14/2020 | CU11800 | CHEVROLET | Avalanche | College Place Wal-Mart |
| 12/30/2019 | CU11800 | CHEVROLET | Avalanche | Pendleton Wal-Mart |
| 11/18/2019 | CU11800 | CHEVROLET | Avalanche | Pendleton Wal-Mart |
| 9/30/2019 | CU11800 | CHEVROLET | Avalanche | Pendleton Wal-Mart |
| 8/30/2019 | CU11800 | CHEVROLET | Avalanche | College Place Wal-Mart |
| 8/27/2019 | 561CET | GMC | Sierra | Pendleton Wal-Mart |
| 7/31/2019 | 769ZVA | NISSAN | Rogue | College Place Wal-Mart |
| 7/30/2019 | CU11800 | CHEVROLET | Avalanche | College Place Wal-Mart |
| 5/14/2019 | CU11800 | CHEVROLET | Avalanche | Pendleton Wal-Mart |

27.     Investigators used the information from the tracking device on the 2007 Chevrolet

Avalanche and Wal-Mart surveillance footage to document that Miguel Jimenez travelled from

his residence to Wal-Mart in order to fraudulently use EBT cards.   On December 13, 2019,

Miguel Jimenez traveled directly from his residence to the Pendleton Wal-Mart.   Jimenez used

**Page 14 – Affidavit of John E. Sherman**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 15 of 79**

Co-conspirator 8 (CC8)'s EBT card at Wal-Mart, during the visit, and he traveled directly back to his residence.   Jimenez is not an authorized user of CC8's EBT card.

On December 30, 2019, JIMENEZ traveled from his residence to the Pendleton Market, 2101 SE Court Ave. Pendleton, OR and then directly traveled to the Pendleton Wal-Mart. Jimenez used the UC EBT card at the Wal-Mart.   After leaving the Wal-Mart, Jimenez traveled directly back to his residence.

28.    On February 18, 2020, Miguel Jimenez drove to the Pendleton Wal-Mart in his white 2007 Chevrolet Avalanche. Jimenez entered the Pendleton Wal-Mart and used CC6's EBT card.   Jimenez is not an authorized user of CC6's EBT card.   Jimenez purchased ten pineapples and other items.   After leaving the Pendleton Wal-Mart, Jimenez traveled to the Milton-Freewater area.   After making a few stops, Jimenez traveled to Los Tapatios Milton-Freewater, where he took the pineapples and other items into the market.

29.    Investigators have observed illegal SNAP transactions at Wal-Mart and other retailers.   In these transactions, Jimenez, or people associated with Jimenez, have used EBT cards without authorization to do so, in order to purchase goods.   Investigators confirmed the use of the EBT cards through an examination of receipts.   A purchase of goods from a retailer using an EBT typically generates a receipt.   These receipts typically show the location, date, time, amount of SNAP used, and a partial EBT card number, which can be used to trace suspect transactions and identify other individuals involved in the fraud.   The recipients who unlawfully sold their benefits, and the retailer who unlawfully purchased the benefits, have both engaged in criminal conduct.

**Page 15 – Affidavit of John E. Sherman**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 16 of 79**

THE LOCATIONS TO BE SEARCHED

30.     I believe, based on my training and experience, that there is probable cause to search each of the identified locations for evidence of Miguel Jimenez and the co-conspirators' fraudulent activity involving SNAP benefits as described in Attachment B.   My belief, based on my training and experience, as well as my conversations with other law enforcement personnel who have conducted similar investigations, is that individuals engaged in these crimes commonly have EBT cards belonging to other people, and PIN numbers for other people's cards at multiple locations, including on their persons, in their automobiles, in their places of business, and in their residences.

31.     I believe that there is probable cause to believe that evidence of the fraud, related financial information, and business activities related to the SNAP program as described in Attachment B will be found at Jimenez's residence, located at 616 NE 9th Court, Milton-Freewater, Oregon, based on the information described above.   Detectives observed Jimenez travel directly from his residence to Wal-Mart retailers, where he used the UC EBT card and/or other unauthorized cards.

32.     In my opinion, there is probable cause to believe that evidence of the fraud, relevant financial information and his business activities as described in Attachment B will be found at Jimenez's business located at 84256 Highway 11, Milton-Freewater, Oregon.   This is the location where Jimenez has repeatedly purchased the UC EBT card.   I believe that there may be business records, EBT cards, ledgers, contact information and other items listed on Attachment B, relating to the SNAP fraud that has been conducted.

/ / /

**Page 16 – Affidavit of John E. Sherman**                **USAO Version Rev. July 2015**

**Exhibit 1
Page 17 of 79**

33.     I believe there is probable cause to believe that evidence of fraud, including EBT cards, receipts, evidence of EBT fraud or other items related to his businesses as described in Attachment B will be found in the three vehicles registered to Miguel Jimenez.   Specifically, the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800 and the 1994 GMC Sierra bearing Oregon License Plate 561CET, and the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ.   As shown in this affidavit, Jimenez used each of these vehicles to drive to stores where he made purchases with unauthorized SNAP benefits.   I also know from my training and experience, that individuals often store EBT cards, receipts, and other records relating to the SNAP fraud in their vehicle.

34.     I believe that there is probable cause to believe that evidence of fraud, including EBT cards, receipts, or other items related to the SNAP fraud as described in Attachment B may be found on the person of Miguel Jimenez.

## Conclusion

35.     Based on the foregoing, I have probable cause to believe that Miguel Jimenez has committed and is committing violations of 7 U.S.C. § 2024 (Supplemental Nutrition Assistance Program – Violations and Enforcement) and 18 U.S.C. § 641 (Theft of Public Money, Property or Records) and I believe there is probable cause to believe that evidence of violations of 7 U.S.C. § 2024 (Supplemental Nutrition Assistance Program – Violations and Enforcement) and 18 U.S.C. § 641 (Theft of Public Money, Property or Records), consisting of the items set forth in Attachment B (Items to be Sought and Seized) will be found at the following locations:

A-1 The commercial property located at 84256 Highway 11, Milton-Freewater, Oregon

A-2 The residential property located at 616 NE 9th Court, Milton-Freewater, Oregon

**Page 17 – Affidavit of John E. Sherman**                     **USAO Version Rev. July 2015**

**Exhibit 1
Page 18 of 79**

A-3 The 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800

A-4 The 1994 GMC Sierra bearing Oregon License Plate 561CET

A-5 The 2010 Nissan Rogue bearing Washington License Plate 769ZVZ

A-6 The person of Miguel Jimenez

I therefore request that the court issue a warrant authorizing a search of the above premises for the items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein.

36.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Donna Maddux, and AUSA Donna Maddux advised me that in her opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

**Request for Sealing**

37.     I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, and the requested search warrant.   I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation.

/ / /

/ / /

**Exhibit 1**
**Page 19 of 79**

Premature disclosure of the contents of the application, this affidavit, and the requested search warrant may adversely affect the integrity of the investigation.

*Sworn by Phone IAW Fed. R. Crim P. 4.1*
JOHN E. SHERMAN
Special Agent, USDA OIG

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at <u>12:32</u> a.m/p.m. on June 18, 2020.

_____
HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge

**Page 19 – Affidavit of John E. Sherman**          **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 20 of 79**

**ATTACHMENT A-1**

**Property to Be Searched**

The property to be searched is **Los Tapatios, 84256 Highway 11, Milton-Freewater, Oregon,** which is a commercial business inside a building located at the southwest corner of the intersection of Sunnyside Road (OR-Highway 332) and OR-Highway 11. The building has concrete block tan painted siding, with a red painted lower wainscoting section and red metal roofing.  The front doors (French glass doors) to the business are located about thirty (30) feet north of the southeast corner of the building on the east facing exterior wall and have exterior black metal security gates.  About fifteen (15) feet south of the front doors is a single red door with a window, which opens to a side storage room for Los Taptios.  There is a rear door to the business located on the west facing exterior wall.  Los Tapatios is located in the same commercial building as the Wayside Market, a separate convenience store and gas station.  There is an open interior hallway connecting Wayside Market and Los Tapatios nearest the front/meat counter (Los Tapatios) and the refrigerated section (Wayside Market).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Exhibit 1**
**Page 21 of 79**



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 2 - Attachment A-1**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 22 of 79**



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 3 - Attachment A-1**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 23 of 79**



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 4 - Attachment A-1**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 24 of 79**

**ATTACHMENT A-2**

**Property to Be Searched**

The property to be searched is **616 Northeast 9th Court, Milton-Freewater, Oregon,** which is a single-family residence and detached shed/shop on the southwest corner lot at the intersection of North Elizabeth Street and Northeast 9th Court.  The residence is "L" shaped, with brown horizontal plank siding, white trimmed windows, a white front door (with a white screen door), and black composite shingle roofing.  There is a detached shed/shop in the backyard of the residence, with matching siding, trim and roofing.  The residence has a large, flat driveway on the north end of the property which is large enough to hold four (4) full-size vehicles with ease.



**Page 1 - Attachment A-2**                          **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 25 of 79**



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 2 - Attachment A-2**                    **USAO Version Rev. July 2015**

Exhibit 1
Page 26 of 79

**ATTACHMENT A-3**

**Property to Be Searched**

The property to be searched is a white 2007 Chevrolet Avalanche, bearing Oregon

License Plate CU11800, assigned VIN (Vehicle Identification Number) No.

3GNFK12307G114966.



/ / /

/ / /

/ / /

**Page 1 - Attachment A-3**                                **USAO Version Rev. July 2015**

Exhibit 1
Page 27 of 79



/ / /

/ / /

/ / /

/ / /

**Page 2 - Attachment A-3**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 28 of 79**

**ATTACHMENT A-4**

**Property to Be Searched**

The property to be searched is a blue 1994 GMC Sierra, bearing Oregon License Plate

561CET, assigned VIN (Vehicle Identification Number) No. 1GTGK29F2RE505579.



**Page 1 - Attachment A-4**                              **USAO Version Rev. July 2015**

**Exhibit 1
Page 29 of 79**

**ATTACHMENT A-5**

**Property to Be Searched**

The property to be searched is a black 2010 Nissan Rogue, bearing Washington License

Plate 769ZVZ, assigned VIN (Vehicle Identification Number) No. JN8AS5MV0AW119476.



**Page 1 - Attachment A-5**                              **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 30 of 79**

**ATTACHMENT A-6**

**Person to Be Searched**

The person to be searched is **Miguel Jimenez,** whose date of birth is September 20, 1964.

Jimenez is approximately 5'07" and weighs approximately 195 pounds.  He has brown eyes.

According to the Washington State Department of Licensing, Jimenez' full name is Miguel

Angel Jimenz-Medina.  His Washington driver's license number is JIMENMA360O0.



/ / /

/ / /

/ / /

/ / /

**Page 1 - Attachment A-6**                                    **USAO Version Rev. July 2015**

Exhibit 1
Page 31 of 79

**ATTACHMENT B**

**Items to Be Seized**

The items to be searched for, seized, and examined, are those items on the premises of Los Tapatios, a commercial business located at 84256 Highway 11, Milton-Freewater, Oregon; the residence and detached shed/shop on the residential property located at 616 NE 9th Court, Milton-Freewater, Oregon; the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800; the 1994 GMC Sierra bearing Oregon License Plate 561CET; the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ; and the person of Miguel Jimenez, as further described in Attachments A-1 through A-6, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 7 U.S.C. § 2024(b)(1)  – Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, Title 7 U.S.C. § 2024(c) –Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, Title 18 U.S.C. § 641, - Public Money, Property or Records (Theft of Government Funds),  and Title 18 U.S.C. § 1343, Fraud by Wire, Radio or Television.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrants.

1.  The items referenced above to be searched for, seized, and examined are as follows:

   a.  Electronic Benefit Transfer ("EBT") Cards;

   b.  EBT card reader terminals (also called Point of Sale terminals), including any manuals, notes, software, or other documents concerning operation, maintenance, modification, or repair of such terminals and related peripherals;

/ / /

/ / /

**Page 1 – Attachment B**                                        **USAO Version Rev. June 2017**

Exhibit 1
Page 32 of 79

c.  Documents and other items referring to or concerning any SNAP or SNAP benefits, including correspondence, flyers, posters, brochures, ledgers, notebooks, address books, and notes;

d.  Documents and other items that would tend to establish the identities of any EBT card holders and/or benefits recipients, such as lists of EBT personal identification numbers (PINs);

e.  Cash journals, cash receipts journals, cash disbursement journals;

f.  Notes payable and receivable, Promissory Notes, IOUs, and other recordation of debts comprising evidence of loans and expenses;

g.  Inventory records, sales invoices, sales records, purchase invoices;

h.  Appointment books;

i.  Records which tend to show the nature and/or quantity of food purchase or sales for Los Tapatios conducted during the period from May 2019 to the present, cash register detail tapes, sales receipts, invoices, bills of lading, purchase orders, and other documents showing purchase of inventory and supplies, and any photographs of the interior or exterior of the premises;

j.  Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachments A-1 through A-6;

k.  Information pertaining to transactions with and/or correspondence with the U.S. Government and related to the offenses set forth above;

/ / /

**Page 2 – Attachment B**                              **USAO Version Rev. June 2017**

Exhibit 1
Page 33 of 79

l.   Documents and other items referring to or concerning any communications between Jimenez and CP1 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes;

m.   Documents and other items referring to or concerning any communications between Jimenez and CC1, CC2, CC3, CC4, CC5, CC6, and CC7 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes.

**Exhibit 1**
**Page 34 of 79**

ORIGINAL

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means          ❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Los Tapatios, 84256 Highway 11, Milton-Freewater,<br>Oregon, as described in Attachment A-1 | )<br>)<br>)  Case No.   3:20-mc-00609 - A<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Oregon
*(identify the person or describe the property to be searched and give its location)*:

as described in Attachment A-1 hereto.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
The information and items set forth in Attachment B hereto.

**YOU ARE COMMANDED** to execute this warrant on or before _____July 2, 2020_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  U.S. Magistrate Judge Stacie F. Beckerman, via Clerk
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    June 18, 2020   12:35pm                        *Judge's signature*

City and state:     Portland, Oregon                          Hon. Stacie F. Beckerman, United States Magistrate Judge
*Printed name and title*

**Exhibit 1**
**Page 35 of 79**

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Exhibit 1**
**Page 36 of 79**

## ATTACHMENT A-1

### Property to Be Searched

The property to be searched is **Los Tapatios, 84256 Highway 11, Milton-Freewater, Oregon,** which is a commercial business inside a building located at the southwest corner of the intersection of Sunnyside Road (OR-Highway 332) and OR-Highway 11. The building has concrete block tan painted siding, with a red painted lower wainscoting section and red metal roofing.  The front doors (French glass doors) to the business are located about thirty (30) feet north of the southeast corner of the building on the east facing exterior wall and have exterior black metal security gates.  About fifteen (15) feet south of the front doors is a single red door with a window, which opens to a side storage room for Los Taptios.  There is a rear door to the business located on the west facing exterior wall.  Los Tapatios is located in the same commercial building as the Wayside Market, a separate convenience store and gas station.  There is an open interior hallway connecting Wayside Market and Los Tapatios nearest the front/meat counter (Los Tapatios) and the refrigerated section (Wayside Market).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 1 - Attachment A-1**                                   **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 37 of 79**



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 2 - Attachment A-1**                     **USAO Version Rev. July 2015**

Exhibit 1
Page 38 of 79



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 3 - Attachment A-1**                    **USAO Version Rev. July 2015**

Exhibit 1
Page 39 of 79



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 4 - Attachment A-1**                    **USAO Version Rev. July 2015**

Exhibit 1
Page 40 of 79

**ATTACHMENT B**

**Items to Be Seized**

The items to be searched for, seized, and examined, are those items on the premises of Los Tapatios, a commercial business located at 84256 Highway 11, Milton-Freewater, Oregon; the residence and detached shed/shop on the residential property located at 616 NE 9th Court, Milton-Freewater, Oregon; the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800; the 1994 GMC Sierra bearing Oregon License Plate 561CET; the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ; and the person of Miguel Jimenez, as further described in Attachments A-1 through A-6, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 7 U.S.C. § 2024(b)(1) – Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, Title 7 U.S.C. § 2024(c) –Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, Title 18 U.S.C. § 641, - Public Money, Property or Records (Theft of Government Funds),  and Title 18 U.S.C. § 1343, Fraud by Wire, Radio or Television.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrants.

1.  The items referenced above to be searched for, seized, and examined are as follows:

    a.  Electronic Benefit Transfer ("EBT") Cards;

    b.  EBT card reader terminals (also called Point of Sale terminals), including any manuals, notes, software, or other documents concerning operation, maintenance, modification, or repair of such terminals and related peripherals;

/ / /

/ / /

**Page 1 – Attachment B**                    **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 41 of 79**

c.  Documents and other items referring to or concerning any SNAP or SNAP benefits, including correspondence, flyers, posters, brochures, ledgers, notebooks, address books, and notes;

d.  Documents and other items that would tend to establish the identities of any EBT card holders and/or benefits recipients, such as lists of EBT personal identification numbers (PINs);

e.  Cash journals, cash receipts journals, cash disbursement journals;

f.  Notes payable and receivable, Promissory Notes, IOUs, and other recordation of debts comprising evidence of loans and expenses;

g.  Inventory records, sales invoices, sales records, purchase invoices;

h.  Appointment books;

i.  Records which tend to show the nature and/or quantity of food purchase or sales for Los Tapatios conducted during the period from May 2019 to the present, cash register detail tapes, sales receipts, invoices, bills of lading, purchase orders, and other documents showing purchase of inventory and supplies, and any photographs of the interior or exterior of the premises;

j.  Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachments A-1 through A-6;

k.  Information pertaining to transactions with and/or correspondence with the U.S. Government and related to the offenses set forth above;

/ / /

**Page 2 – Attachment B**                    **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 42 of 79**

l.   Documents and other items referring to or concerning any communications between Jimenez and CP1 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes;

m.  Documents and other items referring to or concerning any communications between Jimenez and CC1, CC2, CC3, CC4, CC5, CC6, and CC7 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes.

**Exhibit 1**
**Page 43 of 79**

ORIGINAL

❏ Original                   ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.    3:20-mc-00609 - B |
| 616 Northeast 9th Court, Milton-Freewater, Oregon, as | ) |
| described in Attachment A-2 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Oregon
*(identify the person or describe the property to be searched and give its location)*:

as described in Attachment A-2 hereto.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 2, 2020 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    U.S. Magistrate Judge Stacie F. Beckerman, via Clerk
                                                                                                          *(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    June 18, 2020    12:35pm    _____
                                                                                          *Judge's signature*

City and state:    Portland, Oregon    Hon. Stacie F. Beckerman, United States Magistrate Judge
                                                                                          *Printed name and title*

**Exhibit 1**
**Page 44 of 79**

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Exhibit 1**
**Page 45 of 79**

**ATTACHMENT A-2**

**Property to Be Searched**

The property to be searched is **616 Northeast 9th Court, Milton-Freewater, Oregon,** which is a single-family residence and detached shed/shop on the southwest corner lot at the intersection of North Elizabeth Street and Northeast 9th Court.  The residence is "L" shaped, with brown horizontal plank siding, white trimmed windows, a white front door (with a white screen door), and black composite shingle roofing.  There is a detached shed/shop in the backyard of the residence, with matching siding, trim and roofing.  The residence has a large, flat driveway on the north end of the property which is large enough to hold four (4) full-size vehicles with ease.



Page 1 - Attachment A-2                                    USAO Version Rev. July 2015

Exhibit 1
Page 46 of 79



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 2 - Attachment A-2**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 47 of 79**

**ATTACHMENT B**

**Items to Be Seized**

The items to be searched for, seized, and examined, are those items on the premises of Los Tapatios, a commercial business located at 84256 Highway 11, Milton-Freewater, Oregon; the residence and detached shed/shop on the residential property located at 616 NE 9th Court, Milton-Freewater, Oregon; the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800; the 1994 GMC Sierra bearing Oregon License Plate 561CET; the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ; and the person of Miguel Jimenez, as further described in Attachments A-1 through A-6, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 7 U.S.C. § 2024(b)(1)  – Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, Title 7 U.S.C. § 2024(c) –Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, Title 18 U.S.C. § 641, - Public Money, Property or Records (Theft of Government Funds),  and Title 18 U.S.C. § 1343, Fraud by Wire, Radio or Television.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrants.

1.   The items referenced above to be searched for, seized, and examined are as follows:

   a.   Electronic Benefit Transfer ("EBT") Cards;

   b.   EBT card reader terminals (also called Point of Sale terminals), including any manuals, notes, software, or other documents concerning operation, maintenance, modification, or repair of such terminals and related peripherals;

/ / /

/ / /

**Page 1 – Attachment B**                    **USAO Version Rev. June 2017**

**Exhibit 1
Page 48 of 79**

c.  Documents and other items referring to or concerning any SNAP or SNAP benefits, including correspondence, flyers, posters, brochures, ledgers, notebooks, address books, and notes;

d.  Documents and other items that would tend to establish the identities of any EBT card holders and/or benefits recipients, such as lists of EBT personal identification numbers (PINs);

e.  Cash journals, cash receipts journals, cash disbursement journals;

f.  Notes payable and receivable, Promissory Notes, IOUs, and other recordation of debts comprising evidence of loans and expenses;

g.  Inventory records, sales invoices, sales records, purchase invoices;

h.  Appointment books;

i.  Records which tend to show the nature and/or quantity of food purchase or sales for Los Tapatios conducted during the period from May 2019 to the present, cash register detail tapes, sales receipts, invoices, bills of lading, purchase orders, and other documents showing purchase of inventory and supplies, and any photographs of the interior or exterior of the premises;

j.  Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachments A-1 through A-6;

k.  Information pertaining to transactions with and/or correspondence with the U.S. Government and related to the offenses set forth above;

/ / /

**Page 2 – Attachment B**                    **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 49 of 79**

l.   Documents and other items referring to or concerning any communications between Jimenez and CP1 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes;

m.   Documents and other items referring to or concerning any communications between Jimenez and CC1, CC2, CC3, CC4, CC5, CC6, and CC7 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes.

**Exhibit 1**
**Page 50 of 79**

ORIGINAL

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A white 2007 Chevrolet Avalanche, bearing Oregon<br>License Plate CU11800, VIN 3GNFK12307G114966,<br>as described in Attachment A-3 | )<br>)<br>)   Case No.  3:20-mc-00609  - C<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Oregon _____
*(identify the person or describe the property to be searched and give its location)*:

  as described in Attachment A-3 hereto.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
  The information and items set forth in Attachment B hereto.

        **YOU ARE COMMANDED** to execute this warrant on or before _____ July 2, 2020 _____ *(not to exceed 14 days)*
  ☑ in the daytime 6:00 a.m. to 10:00 p.m.    ❏ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   U.S. Magistrate Judge Stacie F. Beckerman, via Clerk  
                                                                                              *(United States Magistrate Judge)*

        ❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ❏ for _____ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    June 18, 2020    12:35pm                                        
                                                                                              *Judge's signature*

City and state:      Portland, Oregon                          Hon. Stacie F. Beckerman, United States Magistrate Judge
                                                                                              *Printed name and title*

Exhibit 1
Page 51 of 79

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____

*Executing officer's signature*

_____

*Printed name and title*

**Exhibit 1**
**Page 52 of 79**

**ATTACHMENT A-3**

**Property to Be Searched**

The property to be searched is a white 2007 Chevrolet Avalanche, bearing Oregon

License Plate CU11800, assigned VIN (Vehicle Identification Number) No.

3GNFK12307G114966.



/ / /

/ / /

/ / /



/ / /

/ / /

/ / /

/ / /

**Page 2 - Attachment A-3**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 54 of 79**

**ATTACHMENT B**

**Items to Be Seized**

The items to be searched for, seized, and examined, are those items on the premises of Los Tapatios, a commercial business located at 84256 Highway 11, Milton-Freewater, Oregon; the residence and detached shed/shop on the residential property located at 616 NE 9th Court, Milton-Freewater, Oregon; the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800; the 1994 GMC Sierra bearing Oregon License Plate 561CET; the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ; and the person of Miguel Jimenez, as further described in Attachments A-1 through A-6, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 7 U.S.C. § 2024(b)(1)  – Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, Title 7 U.S.C. § 2024(c) –Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, Title 18 U.S.C. § 641, - Public Money, Property or Records (Theft of Government Funds),  and Title 18 U.S.C. § 1343, Fraud by Wire, Radio or Television.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrants.

1.  The items referenced above to be searched for, seized, and examined are as follows:

    a.  Electronic Benefit Transfer ("EBT") Cards;

    b.  EBT card reader terminals (also called Point of Sale terminals), including any manuals, notes, software, or other documents concerning operation, maintenance, modification, or repair of such terminals and related peripherals;

/ / /

/ / /

**Exhibit 1**
**Page 55 of 79**

c.  Documents and other items referring to or concerning any SNAP or SNAP benefits, including correspondence, flyers, posters, brochures, ledgers, notebooks, address books, and notes;

d.  Documents and other items that would tend to establish the identities of any EBT card holders and/or benefits recipients, such as lists of EBT personal identification numbers (PINs);

e.  Cash journals, cash receipts journals, cash disbursement journals;

f.  Notes payable and receivable, Promissory Notes, IOUs, and other recordation of debts comprising evidence of loans and expenses;

g.  Inventory records, sales invoices, sales records, purchase invoices;

h.  Appointment books;

i.  Records which tend to show the nature and/or quantity of food purchase or sales for Los Tapatios conducted during the period from May 2019 to the present, cash register detail tapes, sales receipts, invoices, bills of lading, purchase orders, and other documents showing purchase of inventory and supplies, and any photographs of the interior or exterior of the premises;

j.  Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachments A-1 through A-6;

k.  Information pertaining to transactions with and/or correspondence with the U.S. Government and related to the offenses set forth above;

/ / /

**Page 2 – Attachment B**                          **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 56 of 79**

l.  Documents and other items referring to or concerning any communications between Jimenez and CP1 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes;

m.  Documents and other items referring to or concerning any communications between Jimenez and CC1, CC2, CC3, CC4, CC5, CC6, and CC7 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes.

**Exhibit 1
Page 57 of 79**

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    3:20-mc-00609-D |
| A blue 1994 GMC Sierra, bearing Oregon License Plate 561CET, VIN 1GTGK29F2RE505579, as described in Attachment A-4 | ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

    An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Oregon _____
*(identify the person or describe the property to be searched and give its location):*

as described in Attachment A-4 hereto.

    I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

The information and items set forth in Attachment B hereto.

    **YOU ARE COMMANDED** to execute this warrant on or before _____ July 2, 2020 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to U.S. Magistrate Judge Stacie F. Beckerman, via Clerk
*(United States Magistrate Judge)*

    ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      June 18, 2020    12:35pm _____

                                        *Judge's signature*

City and state:      Portland, Oregon _____          Hon. Stacie F. Beckerman, United States Magistrate Judge
                                                   *Printed name and title*

**Exhibit 1**
**Page 58 of 79**

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Exhibit 1**
**Page 59 of 79**

**ATTACHMENT A-4**

**Property to Be Searched**

The property to be searched is a blue 1994 GMC Sierra, bearing Oregon License Plate

561CET, assigned VIN (Vehicle Identification Number) No. 1GTGK29F2RE505579.



**Page 1 - Attachment A-4**                    **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 60 of 79**

**ATTACHMENT B**

**Items to Be Seized**

The items to be searched for, seized, and examined, are those items on the premises of Los Tapatios, a commercial business located at 84256 Highway 11, Milton-Freewater, Oregon; the residence and detached shed/shop on the residential property located at 616 NE 9th Court, Milton-Freewater, Oregon; the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800; the 1994 GMC Sierra bearing Oregon License Plate 561CET; the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ; and the person of Miguel Jimenez, as further described in Attachments A-1 through A-6, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 7 U.S.C. § 2024(b)(1)  – Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, Title 7 U.S.C. § 2024(c) –Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, Title 18 U.S.C. § 641, - Public Money, Property or Records (Theft of Government Funds),  and Title 18 U.S.C. § 1343, Fraud by Wire, Radio or Television.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrants.

1.   The items referenced above to be searched for, seized, and examined are as follows:

    a.   Electronic Benefit Transfer ("EBT") Cards;

    b.   EBT card reader terminals (also called Point of Sale terminals), including any manuals, notes, software, or other documents concerning operation, maintenance, modification, or repair of such terminals and related peripherals;

/ / /

/ / /

**Page 1 – Attachment B**                                   **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 61 of 79**

c.  Documents and other items referring to or concerning any SNAP or SNAP

   benefits, including correspondence, flyers, posters, brochures, ledgers, notebooks,

   address books, and notes;

d.  Documents and other items that would tend to establish the identities of any EBT

   card holders and/or benefits recipients, such as lists of EBT personal identification

   numbers (PINs);

e.  Cash journals, cash receipts journals, cash disbursement journals;

f.  Notes payable and receivable, Promissory Notes, IOUs, and other recordation of

   debts comprising evidence of loans and expenses;

g.  Inventory records, sales invoices, sales records, purchase invoices;

h.  Appointment books;

i.  Records which tend to show the nature and/or quantity of food purchase or sales

   for Los Tapatios conducted during the period from May 2019 to the present, cash

   register detail tapes, sales receipts, invoices, bills of lading, purchase orders, and

   other documents showing purchase of inventory and supplies, and any

   photographs of the interior or exterior of the premises;

j.  Papers, records, documents, files, notes, memos, mail, or other materials

   representing residency, ownership, occupancy, dominion, or control of the

   premises referenced above and described in Attachments A-1 through A-6;

k.  Information pertaining to transactions with and/or correspondence with the U.S.

   Government and related to the offenses set forth above;

/ / /

**Page 2 – Attachment B**                    **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 62 of 79**

l.  Documents and other items referring to or concerning any communications between Jimenez and CP1 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes;

m.  Documents and other items referring to or concerning any communications between Jimenez and CC1, CC2, CC3, CC4, CC5, CC6, and CC7 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes.

ORIGINAL

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means       ☐ Original       ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    3:20-mc-00609 - E |
| A black 2010 Nissan Rogue, bearing Washington | ) | |
| License Plate 769ZVZ, VIN JN8AS5MV0AW119476, | ) | |
| as described in Attachment A-5 | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Oregon _____
*(identify the person or describe the property to be searched and give its location)*:

as described in Attachment A-5 hereto.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 2, 2020 _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  U.S. Magistrate Judge Stacie F. Beckerman, via Clerk
                                                                                                                *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    June 18, 2020    12:35pm

                                                                                            *Judge's signature*

City and state:       Portland, Oregon                        Hon. Stacie F. Beckerman, United States Magistrate Judge
                                                                                            *Printed name and title*

**Exhibit 1**
**Page 64 of 79**

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Exhibit 1**
**Page 65 of 79**

**ATTACHMENT A-5**

**Property to Be Searched**

The property to be searched is a black 2010 Nissan Rogue, bearing Washington License

Plate 769ZVZ, assigned VIN (Vehicle Identification Number) No. JN8AS5MV0AW119476.



**Page 1 - Attachment A-5**                                   **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 66 of 79**

**ATTACHMENT B**

**Items to Be Seized**

The items to be searched for, seized, and examined, are those items on the premises of Los Tapatios, a commercial business located at 84256 Highway 11, Milton-Freewater, Oregon; the residence and detached shed/shop on the residential property located at 616 NE 9th Court, Milton-Freewater, Oregon; the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800; the 1994 GMC Sierra bearing Oregon License Plate 561CET; the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ; and the person of Miguel Jimenez, as further described in Attachments A-1 through A-6, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 7 U.S.C. § 2024(b)(1)  – Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, Title 7 U.S.C. § 2024(c) –Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, Title 18 U.S.C. § 641, - Public Money, Property or Records (Theft of Government Funds),  and Title 18 U.S.C. § 1343, Fraud by Wire, Radio or Television.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrants.

1.  The items referenced above to be searched for, seized, and examined are as follows:

    a.  Electronic Benefit Transfer ("EBT") Cards;

    b.  EBT card reader terminals (also called Point of Sale terminals), including any manuals, notes, software, or other documents concerning operation, maintenance, modification, or repair of such terminals and related peripherals;

/ / /

/ / /

**Page 1 – Attachment B**                                         **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 67 of 79**

c.  Documents and other items referring to or concerning any SNAP or SNAP benefits, including correspondence, flyers, posters, brochures, ledgers, notebooks, address books, and notes;

d.  Documents and other items that would tend to establish the identities of any EBT card holders and/or benefits recipients, such as lists of EBT personal identification numbers (PINs);

e.  Cash journals, cash receipts journals, cash disbursement journals;

f.  Notes payable and receivable, Promissory Notes, IOUs, and other recordation of debts comprising evidence of loans and expenses;

g.  Inventory records, sales invoices, sales records, purchase invoices;

h.  Appointment books;

i.  Records which tend to show the nature and/or quantity of food purchase or sales for Los Tapatios conducted during the period from May 2019 to the present, cash register detail tapes, sales receipts, invoices, bills of lading, purchase orders, and other documents showing purchase of inventory and supplies, and any photographs of the interior or exterior of the premises;

j.  Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachments A-1 through A-6;

k.  Information pertaining to transactions with and/or correspondence with the U.S. Government and related to the offenses set forth above;

/ / /

**Page 2 – Attachment B**                    **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 68 of 79**

l.  Documents and other items referring to or concerning any communications between Jimenez and CP1 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes;

m.  Documents and other items referring to or concerning any communications between Jimenez and CC1, CC2, CC3, CC4, CC5, CC6, and CC7 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes.

**Exhibit 1**
**Page 69 of 79**

ORIGINAL

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.    3:20-mc-00609 - F |
| The person of Miguel Jimenez, as described in Attachment A-6 | ) ) ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Oregon
*(identify the person or describe the property to be searched and give its location)*:

as described in Attachment A-6 hereto.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 2, 2020 _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   U.S. Magistrate Judge Stacie F. Beckerman, via Clerk
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   June 18, 2020      12:35pm                          *Judge's signature*

City and state:      Portland, Oregon                    Hon. Stacie F. Beckerman, United States Magistrate Judge
*Printed name and title*

**Exhibit 1**
**Page 70 of 79**

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Exhibit 1**
**Page 71 of 79**

**ATTACHMENT A-6**

**Person to Be Searched**

The person to be searched is **Miguel Jimenez,** whose date of birth is September 20, 1964.

Jimenez is approximately 5'07" and weighs approximately 195 pounds.  He has brown eyes.

According to the Washington State Department of Licensing, Jimenez' full name is Miguel

Angel Jimenz-Medina.  His Washington driver's license number is JIMENMA360O0.



/ / /

/ / /

/ / /

/ / /

**Page 1 - Attachment A-6**                          **USAO Version Rev. July 2015**

**Exhibit 1**
**Page 72 of 79**

## ATTACHMENT B

## Items to Be Seized

The items to be searched for, seized, and examined, are those items on the premises of Los Tapatios, a commercial business located at 84256 Highway 11, Milton-Freewater, Oregon; the residence and detached shed/shop on the residential property located at 616 NE 9th Court, Milton-Freewater, Oregon; the 2007 Chevrolet Avalanche bearing Oregon License Plate CU11800; the 1994 GMC Sierra bearing Oregon License Plate 561CET; the 2010 Nissan Rogue bearing Washington License Plate 769ZVZ; and the person of Miguel Jimenez, as further described in Attachments A-1 through A-6, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 7 U.S.C. § 2024(b)(1)  – Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, Title 7 U.S.C. § 2024(c) –Presentation for Payment or Redemption of Benefits that have been Illegally Received, Transferred or Used, Title 18 U.S.C. § 641, - Public Money, Property or Records (Theft of Government Funds),  and Title 18 U.S.C. § 1343, Fraud by Wire, Radio or Television.  The items to be seized cover the period of January 1, 2018, through the date of the execution of the search warrants.

1.  The items referenced above to be searched for, seized, and examined are as follows:

    a.  Electronic Benefit Transfer ("EBT") Cards;

    b.  EBT card reader terminals (also called Point of Sale terminals), including any manuals, notes, software, or other documents concerning operation, maintenance, modification, or repair of such terminals and related peripherals;

/ / /

/ / /

**Page 1 – Attachment B**                                        **USAO Version Rev. June 2017**

Exhibit 1
Page 73 of 79

c.  Documents and other items referring to or concerning any SNAP or SNAP benefits, including correspondence, flyers, posters, brochures, ledgers, notebooks, address books, and notes;

d.  Documents and other items that would tend to establish the identities of any EBT card holders and/or benefits recipients, such as lists of EBT personal identification numbers (PINs);

e.  Cash journals, cash receipts journals, cash disbursement journals;

f.  Notes payable and receivable, Promissory Notes, IOUs, and other recordation of debts comprising evidence of loans and expenses;

g.  Inventory records, sales invoices, sales records, purchase invoices;

h.  Appointment books;

i.  Records which tend to show the nature and/or quantity of food purchase or sales for Los Tapatios conducted during the period from May 2019 to the present, cash register detail tapes, sales receipts, invoices, bills of lading, purchase orders, and other documents showing purchase of inventory and supplies, and any photographs of the interior or exterior of the premises;

j.  Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachments A-1 through A-6;

k.  Information pertaining to transactions with and/or correspondence with the U.S. Government and related to the offenses set forth above;

/ / /

**Page 2 – Attachment B**                    **USAO Version Rev. June 2017**

**Exhibit 1**
**Page 74 of 79**

l.  Documents and other items referring to or concerning any communications between Jimenez and CP1 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes;

m.  Documents and other items referring to or concerning any communications between Jimenez and CC1, CC2, CC3, CC4, CC5, CC6, and CC7 about EBT cards, SNAP or SNAP benefits, including correspondence, ledgers, notebooks, address books, and notes.

**Exhibit 1**
**Page 75 of 79**

BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**DONNA B. MADDUX, OSB #023757**
Assistant United States Attorney
Donna.Maddux@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

Certified to be a true and correct
copy of original filed in this District

Dated:  **06/18/2020**

**MARY L. MORAN, Clerk of Court**
U.S. District Court of Oregon

By:  **s/J. Prowell**

Pages ___1___  Through ___2___

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**In the Matter of the Search of**

**The person of Miguel Jimenez, and the premises, properties, and vehicles as described in Attachments A-1 through A-6**

3:20-mc-00609

**MOTION TO SEAL SEARCH WARRANT AND RELATED MATERIALS**

**UNDER SEAL**

The United States of America moves the Court for an order sealing the Application for
Search Warrant, the supporting Affidavit and attachments, the Search Warrant, the return, this
motion, and the resulting order because, as referenced in the Affidavit supporting the Search
Warrant, disclosure of the search warrant documents at this time may result in the endangerment
of the life or physical safety of an individual, flight from prosecution, the destruction of or
tampering with evidence, intimidation of potential witnesses, and/or otherwise seriously
jeopardize an investigation.

**Motion to Seal Search Warrant and Related Materials**                       **Page 1**

**Exhibit 1**
**Page 76 of 79**

WHEREFORE, the government requests that this Motion, the Order, and the Application and Affidavit for Search Warrant for the property described herein, be filed under seal, except for a copy to the Affiant and investigating agency for their investigative needs and a copy of the search warrant to be left at the search location.

The government further requests that the government be authorized to provide copies of the Application for Search Warrant, the supporting Affidavit and attachments, the Search Warrant, the return and any further pleadings to attorneys for any defendants in this case as part of its discovery obligations.

Dated: June 18, 2020                                        Respectfully submitted,

                                                           BILLY J. WILLIAMS
                                                           United States Attorney


                                                           */s/ Donna Maddux*
                                                           DONNA B. MADDUX, OSB #023757
                                                           Assistant United States Attorney

**Motion to Seal Search Warrant and Related Materials**                    **Page 2**

Exhibit 1
Page 77 of 79



Certified to be a true and correct
copy of original filed in this District

Dated: **06/18/2020**

**MARY L. MORAN, Clerk of Court**
U.S. District Court of Oregon

By: **s/J. Prowell**

Pages ___1___  Through ___2___

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

In the Matter of the Search of

**The person of Miguel Jimenez, and the premises, properties, and vehicles as described in Attachments A-1 through A-6**

3:20-mc-00609

**ORDER TO SEAL SEARCH WARRANT AND RELATED MATERIALS**

**UNDER SEAL**

Based on the Motion of the government, the Court finds that an ongoing criminal investigation may be seriously jeopardized by public disclosure at this time of the search warrant-related documents associated with the above-referenced search.

IT IS ORDERED that the Application for Search Warrant, the supporting affidavit and attachments, the Search Warrant and attachments, the Return, this Order, the underlying Motion to Seal, and any further pleadings filed in this matter are SEALED until further order of this Court, except that the government may furnish copies of each document to the affiant and the affiant's investigative agency for their investigative needs, and that one copy of the search warrant be left at the search location.

/ / / /

/ / / /

**Order to Seal Search Warrant and Related Materials**          **Page 1**
Revised March 2018

**Exhibit 1**
**Page 78 of 79**

IT IS FURTHER ORDERED that the government is authorized to provide copies of the Application for Search Warrant, the supporting Affidavit and attachments, the Search Warrant, the return and any further pleadings to attorneys for any defendants in this case as part of its discovery obligations.

Dated: June 18, 2020

_____
HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge

Presented by:

BILLY J. WILLIAMS
United States Attorney

*/s/ Donna B. Maddux*
_____
DONNA B. MADDUX, OSB #023757
Assistant United States Attorney

**Order to Seal Search Warrant and Related Materials**                    **Page 2**

Exhibit 1
Page 79 of 79



# Washington State Criminal Justice Training Commission

Recognizes that

## Eric S. Eastman & Watts

*have met the minimum performance standards as set forth in WAC 139-05-915 and are therefore recognized as a certified*

# Narcotic Detection Canine Team



Tisha H. Jones
Certification Manager

May 11, 2020
Certification Date

Expiration: Automatically in 24 months

**Exhibit 2**